Timothy **LUPLOW**, Petitioner
(Defendant),

v.

The **STATE** of Wyoming, Respondent
(Plaintiff).

Charles Gary **JENNINGS**, Appellant
(Appellant/Respondent),

v.

Kathryn M. **CURRIER**, Appellee
(Appellee/Petitioner).

Nos. 94–88, 94–92.

Supreme Court of Wyoming.

June 16, 1995.

Wyoming Public Defender Program: Leonard D. Munker, State Public Defender, Deborah Cornia, Appellate Counsel, Cheyenne, and Stephen K. Palmer of McKinney Law Offices, Rock Springs, for petitioner.

Joseph B. Meyer, Atty. Gen., Sylvia Lee Hackl, Deputy Atty. Gen., D. Michael Pauling, Sr. Asst. Atty. Gen., Mary Beth Wolff, Sr. Asst. Atty. Gen., Cheyenne, for respondent.

Thomas A. Fasse of Miller & Fasse, P.C., Riverton, for appellant.

David B. Hooper of Hooper Law Offices, P.C., Riverton, for appellee.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR and LEHMAN, JJ.

THOMAS, Justice.

These combined cases raise the constitutionality of the Wyoming criminal statute proscribing stalking, WYO.STAT. § 6-2-506 (Supp.1994), in two ways. Timothy Luplow (Luplow) was charged with misdemeanor stalking in the Sheridan County Court where the question of constitutionality of the statute was certified to the District Court for the Fourth Judicial District. That court certified the question of constitutionality to this court. In the Fremont County Court a protective order was entered against Charles Gary Jennings (Jennings) at the behest of Kathryn M. Currier (Currier). Jennings appealed to the District Court for the Ninth Judicial District, and that court certified the question of constitutionality of the criminal statute as well as the protective order statutes, WYO.STAT. §§ 7-3-506 to -511 (Supp.1994), to this court. The challenge to the statutes is that they are facially unconstitutional as vague and overbroad. We are satisfied the statutes can be construed as constitutional and, as properly applied, they do not infringe upon constitutional protections. We so hold in answering the certified questions.

In the Order Certifying Question to Supreme Court entered in the District Court for the Fourth Judicial District in and for Sheridan County, the certified question of law is:

Whether WYO.STAT. § 6-2-506 is unconstitutional in that the statute as written is vague and overbroad.

In case No. 94-88, Luplow filed a Brief of Petitioner, in which the issues are stated as:

I. Whether W.S. § 6-2-506 is unconstitutionally vague under the provisions of Articles I, VI and XX [sic] of the Wyoming Constitution and the First, Fifth and Fourteenth Amendments to the United States Constitution?

II. Whether W.S. § 6-2-506 is unconstitutionally overbroad under the provisions of Articles I, VI and XX [sic] of the Wyoming Constitution and the First, Fifth and Fourteenth Amendments to the United States Constitution?

In its Brief of Respondent, the State identifies the issue as:

Whether W.S. § 6-2-506 is unconstitutionally vague or overbroad?

We initially address the question in the context of the criminal statute. It provides:

(a) As used in this section:

(i) "Course of conduct" means a pattern of conduct composed of a series of acts over any period of time evidencing a continuity of purpose;

(ii) "Harass" means to engage in a course of conduct, including but not limited to verbal threats, written threats, vandalism or nonconsensual physical contact, directed at a specific person or the family of a specific person, which the defendant knew or should have known would cause a reasonable person to suffer substantial emotional distress, and which does in fact seriously alarm the person toward whom it is directed.

(b) Unless otherwise provided by law, a person commits the crime of stalking if, with intent to harass another person, the person engages in a course of conduct reasonably likely to harass that person, including but not limited to any combination of the following:

(i) Communicating, anonymously or otherwise, or causing a communication with another person by verbal, electronic, mechanical, telegraphic, telephonic or written means in a manner that harasses;

(ii) Following a person, other than within the residence of the defendant;

(iii) Placing a person under surveillance by remaining present outside his or her school, place of employment, vehicle, other place occupied by the person, or residence other than the residence of the defendant; or

(iv) Otherwise engaging in a course of conduct that harasses another person.

(c) This section does not apply to an otherwise lawful demonstration, assembly or picketing.

(d) Except as provided under subsection (e) of this section, stalking is a misdemeanor punishable by imprisonment for not more than six (6) months, a fine of not more than seven hundred fifty dollars ($750.00), or both.

(e) A person convicted of stalking under subsection (b) of this section is guilty of felony stalking punishable by imprisonment for not more than ten (10) years, if:

(i) The act or acts leading to the conviction occurred within five (5) years of a prior conviction under this subsection, or under subsection (b) of this section, or under a substantially similar law of another jurisdiction;

(ii) The defendant caused serious bodily harm to the victim or another person in conjunction with committing the offense of stalking;

(iii) The defendant committed the offense of stalking in violation of any condition of probation, parole or bail; or

(iv) The defendant committed the offense of stalking in violation of a temporary or permanent order of protection issued pursuant to W.S. 7–3–508 or 7–3–509, or pursuant to a substantially similar law of another jurisdiction.

WYO.STAT. § 6–2–506 (Supp.1994).

In his brief, Luplow concedes the facts relating to the two counts charged of misdemeanor stalking. The victim in the first count was staying at the Holiday Inn in Sheridan. While she was there, the phone rang. She answered it, but no one replied on the other end. She hung up the phone and, minutes later, heard a knock at the door. When she went to the door, she found no one there and, a short time later, there was another knock at the door. Again, she was unable to find anyone there. A short while later, another call was made to the victim, and she was asked to dinner by a male voice. She declined the invitation, and the caller then asked whether she would like to perform fellatio on him. The victim hung up the phone and hung up each time when the phone rang another two times. She then contacted the front desk about the incident. An employee of the hotel, who had observed a man using the house phone immediately prior to the call from the victim, followed the man outside and noted he left in a vehicle which was registered to Luplow.

Nine days later, the victim of the conduct charged in the second count was also a guest at the Holiday Inn in Sheridan. When she was returning to her room, she observed a man following her. The man said something

that she did not understand, and she entered her room without looking at him. About five minutes later, there was a knock on her door and, when she looked through the peephole, she saw the man she had earlier seen in the hall. She asked what he wanted, and he said he wanted to enter the room and talk with her. A few minutes later, her phone rang, and a male voice asked her why she would not open the door and talk to him. The caller then requested her to join him in the hot tub for sex. She hung up the phone, but received another call moments later from the same individual. That person told her he had been watching her all evening and, again, requested her to join him in the hot tub. She identified Luplow as the individual she had seen that evening from a photo lineup.

After he was charged with the two counts of misdemeanor stalking, Luplow entered pleas of not guilty. Prior to trial, the county court denied his motion to dismiss the charges upon the ground that the stalking statute was unconstitutional. The county court did, however, certify the question of constitutionality to the district court, and that court, in turn, presented the certified question to this court. We agreed to answer the certified question and consolidated the criminal case with case No. 94–92, *Jennings v. Currier*, an appeal from a stalking protection order entered in a county court.

We begin our analysis of the constitutionality of the stalking statute by recalling the jurisprudential rule that "every law must be presumed to be constitutional, with all doubt resolved in its favor." *Keser v. State*, 706 P.2d 263, 266 (Wyo.1985) (quoting *Sanchez v. State*, 567 P.2d 270, 274 (Wyo.1977)). More recent cases follow this rule. *Wyoming Coalition v. Wyoming Game and Fish Comm'n*, 875 P.2d 729 (Wyo.1994); *Johnson v. State Hearing Examiner's Office*, 838 P.2d 158 (Wyo.1992); *Righter v. State*, 752 P.2d 416 (Wyo.1988). The burden then assigned to one who challenges a statute for facial unconstitutionality asserting vagueness is to demonstrate that (1) the statute reaches a substantial amount of constitutionally protected conduct; or (2) the statute specifies no standard of conduct at all. *McCone v. State*, 866 P.2d 740, 745 (Wyo.1993); *Ochoa v.

State*, 848 P.2d 1359, 1363 (Wyo.1993); *Griego v. State*, 761 P.2d 973, 975 (Wyo.1988). We have said the ultimate test under a vagueness challenge is whether a person of ordinary intelligence could read the statute and comprehend what conduct is prohibited. *Sanchez.*

In *McCone*, we summarized our analysis with respect to vagueness, saying:

When we review a statute for vagueness, we begin by determining whether the statute may be challenged "facially" or only as it applies to the challenger's conduct. *Ochoa v. State*, 848 P.2d 1359, 1363 (Wyo. 1993) (*citing Griego v. State*, 761 P.2d 973, 975 (Wyo.1988)). We review a statute "facially," *i.e.*, we examine the statute in light of how it might be applied to situations other than the challenger's, only if the statute "reaches a substantial amount of constitutionally protected conduct," or if the statute specifies no standard of conduct at all. *Griego*, 761 P.2d at 975 (*quoting Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982)); *see also Ochoa*, 848 P.2d at 1363. McCone asserts that W.S. 6–2–505(a) should be reviewed "facially" because it reaches a substantial amount of protected speech such as "practical jokes and groundless threats" and because it specifies no standard at all.

\* \* \* \* \* \*

Simply because creative minds are able to devise a scenario where a statute could be used to punish constitutionally protected conduct does not mean the "statute reaches a substantial amount of protected conduct." Wyoming Statute 6–2–505 does not reach a substantial amount of constitutionally protected conduct.

Wyoming Statute 6–2–505 is not a statute which has no standard at all. A statute employs a standard, for purposes of vagueness, if " 'by [its] terms or as *authoritatively construed* [it applies] without question to certain activities, but whose application to other behavior is uncertain.' " *Griego*, 761 P.2d at 976 (*quoting Smith v. Goguen*, 415 U.S. 566, 577–78, 94 S.Ct. 1242, 1249, 39 L.Ed.2d 605 (1974)).

Clearly the terms of this statute apply to certain activities, *i.e.,* threatening to bomb a public facility with the intent to force evacuation of that facility.

Since we have determined that W.S. 6-2-505 does not reach a "substantial amount of protected conduct" and that it is not a statute with no standards at all, our review of the statute is limited to a determination of whether it is unconstitutionally vague as it applies to McCone's conduct. To determine whether W.S. 6-2-505 is unconstitutionally vague as applied to McCone, "we must decide whether the statute provides sufficient notice to a person of ordinary intelligence that [McCone's] conduct was illegal and whether the facts of the case demonstrate arbitrary and discriminatory enforcement." *Griego,* 761 P.2d at 976. In determining whether W.S. 6-2-505 provides sufficient notice, we look to the statutory language and previous court decisions which have limited or applied the statute. *Id.*

*McCone,* 866 P.2d at 745-46.

It appears Wyoming is one of forty-eight states and the District of Columbia which has adopted a criminal statute forbidding stalking. M. Katherine Boychuk, *Are Stalking Laws Unconstitutionally Vague or Overbroad?,* 88 Nw.U.L.Rev. 769 (1993). This approach was pursued because of a legislative view that existing remedies, whether civil or criminal, were inadequate to address the problem. *See* Robert P. Faulkner & Douglas H. Hsiao, *And Where You Go I'll Follow: The Constitutionality of Antistalking Laws and Proposed Model Legislation,* 31 Harv.J. on Legis. 1, 2, n. 3 (1994). While the statutory language is not identical, the courts that have analyzed constitutionality of such statutes in light of a vagueness challenge or a challenge the statute is overbroad have upheld the constitutionality of the statute. *Culbreath v. State,* No. CR-94-291, 1995 WL 217573, —— So.2d —— (Ala.Cr. App. April 14, 1995); *People v. Heilman,* 25 Cal.App.4th 391, 30 Cal.Rptr.2d 422 (1994); *State v. Culmo,* 43 Conn.Supp. 46, 642 A.2d 90 (1993); *Bouters v. State,* No. 83,558, 1995 WL 242403, —— So.2d —— (Fla.1995) (*aff'g Bouters v. State,* 634 So.2d 246 (Fla.Ct.App.

1994)); *Gilbert v. State,* No. 84,161, 1995 WL 242390, —— So.2d —— (Fla.1995) (*aff'g Gilbert v. State,* 639 So.2d 191 (Fla.Ct.App. 1994)); *Salatino v. State,* 644 So.2d 1035 (Fla.Ct.App.1994); *State v. Tremmel,* 644 So.2d 102 (Fla.Ct.App.1994); *State v. Kahles,* 644 So.2d 512 (Fla.Ct.App.1994); *Pallas v. State,* 636 So.2d 1358 (Fla.Ct.App.1994); *Johnson v. State,* 648 N.E.2d 666 (Ind.Ct. App.1995); *Johnson v. State,* 264 Ga. 590, 449 S.E.2d 94 (1994); *Commonwealth v. Kwiatkowski,* 418 Mass. 543, 637 N.E.2d 854 (1994); *State v. Benner,* 96 Ohio App.3d 327, 644 N.E.2d 1130 (1994); *Dayton v. Smith,* 68 Ohio Misc.2d 20, 646 N.E.2d 917 (Ohio Mun. Ct.1994); *State v. Saunders,* 886 P.2d 496 (Okla.Crim.App.1994); *Commonwealth v. Urrutia,* 439 Pa.Super. 227, 653 A.2d 706 (1995); *Woolfolk v. Commonwealth,* 18 Va. App. 840, 447 S.E.2d 530 (1994). We join those courts which have upheld the constitutionality of such statutes.

We afford to Luplow the benefit of the doubt on his facial challenge for vagueness, in the sense that we will deal with this as a justiciable issue. A facial challenge can be mounted only when the statute reaches a substantial amount of constitutionally protected conduct or if the statute is shown to specify no standard of conduct at all. *McCone; Ochoa; Griego.*

We are satisfied Wyo.Stat. § 6-2-506(c) (Supp.1994), which excludes "otherwise lawful demonstration, assembly or picketing," substantially disposes of any contention that the statute affects constitutionally protected conduct. It is true it may inhibit speech, but only in a constitutionally permissible way. *McCone; Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); *United States v. Gaudreau,* 860 F.2d 357 (10th Cir.1988); *Pallas; Benner.* In addition, we are satisfied the statute does satisfy the requirement that there be a standard of conduct. *Bouters.*

Our analysis of the statute persuades us the definition in subparagraph (a)(i) is an appropriately clear statement of what constitutes a course of conduct. Luplow complains about the definition in subparagraph (a)(ii) of "harass," but the statute must be read in its entirety. The definition includes a course of

468

conduct, and it alludes to "verbal threats, written threats, vandalism, or nonconsensual physical contact," all of which are specific articulations of the proscribed activities. There is concern about the phrase "but not limited to" but, in paragraph (b), subparagraphs (i), (ii), and (iii), other specific conduct is articulated. We are satisfied it is permissible to refer to that section of the statute in determining what the phrase "but not limited to" connotes in the definition of "harass."

Concern is expressed about the standard of a "reasonable person" who suffers "substantial emotional distress," but the concept of a "reasonable person" is well known and "emotional distress" is defined in our cases in a civil context so that there can be no uncertainty as to their meaning. *R.D. v. W.H.,* 875 P.2d 26 (Wyo.1994); *Wilder v. Cody Country Chamber of Commerce,* 868 P.2d 211 (Wyo.1994); *Town of Upton v. Whisler,* 824 P.2d 545 (Wyo.1992); *Davis v. Consolidated Oil & Gas, Inc.,* 802 P.2d 840 (Wyo.1990); *Leithead v. American Colloid Co.,* 721 P.2d 1059 (Wyo.1986). *See Bouters; Woolfolk.* The word "substantial" has a sufficiently definitive meaning that we think it can be understood by persons of common intelligence.

The statute encompasses in the definition of "harass" the concept of knowledge which is not unusual to our criminal law and, in subparagraph (b), it requires a specific intent to harass. These are features that other courts have found add to the specificity of the statutory proscription. *Culbreath; Heilman; Johnson,* 648 N.E.2d 666; *Dayton; Saunders; Woolfolk.*

With respect to subparagraph (b)(iv), which alludes to otherwise engaging in a course of conduct that harasses another person, we conclude the provision is limited to those acts encompassed within the definition of the word "harass" in subparagraph (a)(ii) and are not otherwise articulated in paragraph (b). The result of our statutory analysis is that sufficient specificity exists defining the conduct proscribed to meet the test of vagueness.

■ Turning to the claim that the stalking statute is overbroad, we note the definition of "overbroad," which we have adopted in the context of a facial challenge:

[I]f it "does not aim specifically at evils within the allowable area of [government] control, but * * * sweeps within its ambit other activities that constitute an exercise" of protected expressive or associational rights.

*Ochoa,* 848 P.2d at 1363, (citing LAURENCE H. TRIBE, AMERICAN CONSTITUTIONAL LAW § 12–27 at 1022 (2d ed. 1988) (quoting *Thornhill v. Alabama,* 310 U.S. 88, 97, 60 S.Ct. 736, 742, 84 L.Ed. 1093 (1940)).

To be facially void as overbroad, the statute must have a substantial "chilling" effect on First Amendment expression. *American Communications Ass'n, C.I.O. v. Douds,* 339 U.S. 382, 399, 70 S.Ct. 674, 684, 94 L.Ed. 925, *reh'rg denied,* 339 U.S. 990, 70 S.Ct. 1017, 94 L.Ed. 1391 (1950) (citing *Cox v. New Hampshire,* 312 U.S. 569, 61 S.Ct. 762, 85 L.Ed. 1049 (1941). The government may regulate free expression if it is content neutral, furthers a substantial governmental interest, and imposes the least restrictive alternative on that expression. *See United States v. Grace,* 461 U.S. 171, 103 S.Ct. 1702, 75 L.Ed.2d 736 (1983). Other courts have held that such statutes do encompass a substantial or significant governmental interest. *Culmo; Saunders.* The regulation is content neutral and, in the context of the evil sought to be avoided, the statute probably imposes the least restrictive alternative on free expression. As we have noted above, the right of free speech is not an unqualified right.

In the Luplow case, we hold the Wyoming stalking statute is not void for vagueness, nor is it subject to constitutional attack as being overbroad. We answer the certified question in the Luplow case in the negative.

In the Certification Order from the District Court of the Ninth Judicial District in and for Fremont County, the question certified is stated to be:

1. Whether W.S. §§ 6–2–506 and 7–3–506 through 511 are facially unconstitutional?

Jennings was designated as the Appellant, and in his Appellant's Brief the issues are stated to be:

I. Whether W.S. §§ 6–2–506 and 7–3–506 through 511 are facially unconstitutional?

A. Are the Wyoming stalking statutes §§ 7–3–506 through 511 and 6–2–506 unconstitutionally vague?

B. Are the Wyoming stalking statutes §§ 7–3–506 through 511 and 6–2–506 unconstitutionally overbroad?

In her Brief of Appellee, Currier offers two issues for consideration:

I. Whether Appellant has standing to challenge the constitutionality of Wyoming Statute Section 6–2–506?

II. Whether Wyoming Statute Sections 6–2–506 and 7–3–506 through 511 are facially constitutional?

The facts relied upon in the entry of the stalking protection order by the Fremont County court are somewhat complex. Currier and Jennings both live three to four miles north of Riverton and are rural neighbors. Currier, a retired school teacher, trains and shows horses and dogs, and Jennings is a farmer living one-half mile east of Currier. They have been neighbors for approximately fifty-two years.

Trouble between them started when Currier's German shepherd named "Cap" was shot and killed on February 4, 1991. Currier sued Jennings for shooting her dog, but a six-person jury decided the case against Currier. Currier was disappointed and distressed because she thought the verdict was the result of perjured testimony by Jennings. She admits she has told others Jennings lied under oath when they asked her about the trial. She has also sent letters to Jennings and his wife complaining of Jennings' lies and the loss of her pet. She defends this conduct as "necessary closure" to this episode in her life.

Even though Jennings prevailed at the trial, he has thwarted any attempt by Currier to effect closure and achieve peace of mind. The record supports the findings made by the county court as to Jennings'

acts or the acts he caused to be done on his behalf. For clarity, the findings of the county court judge are:

1. On April 26, 1993, Jennings attended a Humane Society meeting and verbally harassed Currier;

2. On May 31, 1993, when Currier was riding horses with her son, Jennings yelled at them three times within a two-hour period telling them to ride their horses on the right side of the road;

3. On July 4, 1993, Jennings confined three stray dogs he alleged he found on his property and would not allow a sheriff's deputy on his property to rescue them, saying only that Currier would have to call him and obtain his permission to rescue the dogs;

4. On July 19 or 20, 1993, as Currier was riding her horse around the block, the words "Curriers are nuts" was written in the sand near the shoulder of the road close to Jennings' home; [1]

5. On August 14, 1993, the vehicle driven by Currier's husband, with Currier as a passenger, was followed dangerously close by Jennings in his truck until Currier's husband suddenly slowed down, causing Jennings to veer off to the north to avoid an accident;

6. On August 16, 1993, while Currier was riding a colt she was training, Jennings threw a bucket at her, causing the colt to lunge;

7. Also on August 16, after the "bucket incident", Currier recovered an "Ol' Roy" sack of dog food which had been partially burned and secured with a rock near the place where the bucket was thrown. [2] Currier had seen Jennings earlier in the same location burning something, but didn't know what it was at that time;

8. On August 16, 1993, around midnight, the power transformer supplying

---

**1.** Having heard the testimony, the trial court listed this incident as part of Jennings' course of conduct even though Mrs. Jennings testified she wrote this message and her husband did not instruct her to do so.

**2.** Currier owned another valuable German shepherd, which she had named "Roy."

electricity solely to the Currier home was shot out at close range;[3]

9. On August 18, 1993, after the transformer had been replaced, Jennings burned the grass and weeds surrounding the transformer pole, which is located on public property;

10. On August 20, 1993, Jennings tried to spook Currier's horse by spraying in her direction with a high-pressure water hose. Later that day, he returned, followed her in his truck, and again told her to stay on the right side of the road;[4]

11. On September 7, 1993, Jennings strung barbed wire fencing across the barrow pit Currier used to ride while training her horses;[5]

12. On September 9, 1993, Jennings rode his motorcycle toward Currier at a fast rate of speed on the shoulder of the road where she was riding;[6] and

13. On September 10, 1993, Currier again found a sack of "Ol' Roy" dog food in her yard with a black circle around the name "Roy" and a line drawn through the name. Shortly after Currier discovered the sack, Jennings drove up and turned around in her driveway close to where the sack had been placed and secured with a rock.

The order of protection entered by the county court on October 12, 1993 was based upon these events. Jennings has appealed from that order and, after his appeal to the district court, that court certified the question of constitutionality.

■ The statutes which justify the entry of an order of protection are:

WYO.STAT. § 7–3–506 (Supp.1994), which provides:

(a) As used in W.S. 7–3–506 through 7–3–511:

(i) "Court" means the justice of the peace court, county court or the district court in the county where an alleged victim of stalking resides, or where the alleged perpetrator of the stalking is found;

(ii) "Order of protection" means a court order granted for the protection of a victim of stalking;

(iii) "Stalking" means conduct as defined by W.S. 6–2–506(b).

WYO.STAT. § 7–3–507 (Supp.1994), which provides:

(a) A victim of stalking, or the district attorney on behalf of the alleged victim, may file with the court a petition for an order of protection.

(b) The petition shall be accompanied or supplemented by one (1) or more sworn affidavits setting out specific facts showing the alleged stalking and the identity of the alleged stalker.

(c) No filing fee shall be charged for the filing of a petition under this section nor shall a fee be charged for service of process.

(d) The attorney general shall promulgate a standard petition form which may be used by petitioners. The justice of the peace or the clerk of the county or district court shall make standard petition forms available to petitioners, with instructions for completion, without charge. If the petition is not filed by the district attorney, the court may appoint an attorney to represent an indigent petitioner. Nothing in this subsection shall prevent the victim from hiring an attorney or filing a petition pro se.

(e) A petition may be filed under this section whether or not the individual who is alleged to have engaged in a course of

---

3. Even though the transformer incident was mentioned, the county court did not rely on it in issuing its Order of Protection because of the lack of evidence that Jennings shot it out. We agree with the trial court that one must wonder how this item is to be separated from the entire list of unfortunate events.

4. The record demonstrates it was Currier's custom to ride her horses in the barrow pit, rather than on the road itself. She had done that for approximately forty-two years without any comment from Jennings.

5. Currier's testimony was that, while she did not notice the barbed wire until almost upon it, she was able to avoid serious injury.

6. On this occasion also, Currier managed to keep her horse under control and was able to avoid injury.

conduct prohibited under W.S. 6–2–506 has been charged or convicted under W.S. 6–2–506 for the alleged crime.

WYO.STAT. § 7–3–508 (Supp.1994), which provides:

(a) Upon the filing of a petition for an order of protection, the court shall schedule a hearing on the petition to be conducted within seventy-two (72) hours after the filing of the petition, and shall cause each party to be served with an order to appear, a copy of the petition and a copy of the supporting affidavits. Service shall be made upon each party at least twenty-four (24) hours before the hearing. The failure to hold or complete the hearing within seventy-two (72) hours shall not affect the validity of the hearing or any order issued thereon.

(b) If the court determines from the specific facts shown by the petition and supporting affidavits that there exists a clear and present danger of further stalking or of serious adverse consequences to any person, the court may grant ex parte a temporary order of protection pending the hearing, and shall cause a copy of the temporary order of protection to be served on each party. The court may prescribe terms in the temporary order of protection which it deems sufficient to protect the victim and any other person pending the hearing, including but not limited to the elements described in W.S. 7–3–509(a).

(c) A temporary order of protection issued under paragraph (b) of this section shall contain a notice that willful violation of any provision of the order constitutes a crime as defined by W.S. 7–3–510(c), can result in immediate arrest and may in some cases subject the perpetrator to enhanced penalties for felony stalking under W.S. 6–2–506(e).

WYO.STAT. § 7–3–509 (Supp.1994), which provides:

(a) Following a hearing under W.S. 7–3–508(a) and upon a finding that conduct constituting stalking has been committed, the court shall enter an order of protection ordering the respondent to refrain from any further acts of stalking involving the victim or any other person. As a part of any order of protection, the court may direct that the respondent:

(i) Stay away from the home, school, business or place of employment of the victim or any other locations the court may describe in the order; and

(ii) Refrain from contacting, intimidating, threatening or otherwise interfering with the victim of the alleged offense and any other persons, including but not limited to members of the family or household of the victim, as the court may describe in the order.

(b) The order shall contain a notice that willful violation of any provision of the order constitutes a crime as defined by W.S. 7–3–510(c), can result in immediate arrest and may in some cases subject the perpetrator to enhanced penalties for felony stalking under W.S. 6–2–506(e).

WYO.STAT. § 7–3–510 (Supp.1994), which provides:

(a) An order of protection granted under W.S. 7–3–509 shall be served upon the respondent pursuant to the Wyoming Rules of Civil Procedure. A copy of the order of protection shall be filed with the sheriff of the county.

(b) An order of protection granted by the court under W.S. 7–3–509 shall be effective for a fixed period of time not to exceed three (3) months. The order may be extended repetitively upon a showing of good cause for additional periods of time not to exceed three (3) months each.

(c) Willful violation of a temporary order of protection issued under W.S. 7–3–508 or of an order of protection issued under W.S. 7–3–509 is a misdemeanor punishable by imprisonment for not more than six (6) months, a fine of not more than seven hundred fifty dollars ($750.00), or both. A temporary order of protection issued under W.S. 7–3–508 and an order of protection issued under W.S. 7–3–509 shall have statewide applicability and a criminal prosecution under this subsection may be commenced in any county in which the respondent commits an act in violation of the order.

(d) The remedies provided by W.S. 7–3–506 through 7–3–511 are in addition to any other civil or criminal remedy available under the law.

WYO.STAT. § 7–3–511 (Supp.1994), which provides:

(a) A person who allegedly has been a victim of stalking may request the assistance of a law enforcement agency, which shall respond to the request in a manner appropriate to the circumstances.

(b) A law enforcement officer or agency responding to the request for assistance may take whatever steps are reasonably necessary to protect the victim, including:

(i) Advising the victim of the remedies available under W.S. 7–3–506 through 7–3–511 and the availability of shelter, medical care, counseling and other services;

(ii) Advising the victim, when appropriate, of the procedure for initiating proceedings under W.S. 7–3–506 through 7–3–511 or criminal proceedings and the importance of preserving evidence; and

(iii) Providing or arranging for transportation of the victim to a medical facility or place of shelter.

(c) Any law enforcement agency or officer responding to a request for assistance under W.S. 7–3–506 through 7–3–511 is immune from civil liability when complying with the request, provided that the agency or officer acts in good faith and in a reasonable manner.

We perceive this set of statutes as an effort by the legislature to provide an individual and civil remedy for stalking. Jennings complains the prosecutorial authority has been delegated to the unfettered discretion of any individual. His attack primarily focuses, however, upon the facial unconstitutionality of the criminal statute adopted by reference in WYO.STAT. § 7–3–506(a)(iii). We agree that the validity of this set of statutes depends upon the constitutionality of the criminal stalking statute because of the adoption of the definition from that statute. We have held, in the *Luplow* case, that the criminal statute is constitutional. Consequently, we answer the question certified by the District Court of the Ninth Judicial District in the negative.

We have only the certified question before us, which we answer in the negative. We also uphold the constitutionality of the statutes as applied to the Jennings case. We agree with the Fremont County court that the evidence garnered from the hearing it held demonstrates Jennings did engage in a "course of conduct" against Currier consisting of "verbal threats, written threats, vandalism or nonconsensual physical contact." We also agree, for the purpose of holding the statute constitutional as applied, with the finding that Jennings "knew or should have known [the conduct engaged in] would cause a reasonable person to suffer substantial emotional distress." The record supports the finding that Currier is a "reasonable person" who was in fact "seriously alarmed" by Jennings' continual harassing behavior.

These cases are remanded for further proceedings in accordance with our resolution of the certified questions.