Carl W. McCLELLAN, Petitioner,

v.

The STATE of Wyoming, Respondent.

No. 96–123.

Supreme Court of Wyoming.

Feb. 19, 1997.

Micheal K. Shoumaker and Fred R. Dollison of Northern Wyoming Law Associates, Sheridan, for Petitioner.

William U. Hill, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Theodore E. Lauer, Director of the Prosecution Assistance Program; Ian Shaw, Student Director of the Prosecution Assistance Program; and Michael Iozzo, Student Intern for the Prosecution Assistance Program, for Respondent.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN and LEHMAN, JJ.

MACY, Justice.

This case comes before us upon an order granting Petitioner Carl McClellan's petition for a writ of review. We agreed to review the district court's affirmance of McClellan's conviction in the justice of the peace court on three counts of unlawful subdivision of land.

We affirm.

## ISSUES

The issues which were set forth in McClellan's petition for a writ of review are as follows:

A. Was the evidence sufficient to support the jury verdict?

B. Did the justice of the peace err in failing to allow the defendant to present testimony that he was selling most of his property in one parcel rather than divided and already had a buyer before the State restricted the deeds?

C. Are Wyoming Statutes 18–5–301 through 18–5–315 void for vagueness?

D. Does Wyoming Statute 18–5–314 violate the constitutional provisions regarding double jeopardy?

## FACTS

In early 1993, McClellan purchased approximately 1,000 acres of land in Johnson County which were located about fourteen miles southeast of Buffalo. This case concerns 165.216 acres of that land.

McClellan conveyed forty acres to Robert G. Lau and Genevieve Lau on January 19, 1994. On May 12, 1994, the Laus conveyed thirty of these forty acres to the Tradesman Corporation, a closely held corporation. McClellan was the president and vice president of the Tradesman Corporation, and his wife was its secretary and treasurer.

McClellan next conveyed forty acres to himself and his wife on May 31, 1994. Also on that date, McClellan and his wife conveyed twenty of their forty acres to Dave L. Costello and Patricia Costello. On August 31, 1994, the Tradesman Corporation conveyed twenty acres of its thirty acres to McClellan.

On September 6, 1994, McClellan and his wife conveyed their remaining twenty acres to Robert G. Lau and Genevieve Lau. On that same date, McClellan conveyed ten acres to Genevieve Lau and ten acres to Robert G. Lau. McClellan kept the remaining 85.216 acres solely in his name.

As a result of the conveyances, the 165.216 acres were divided in the following manner:

| | |
|---|---|
| McClellan | 85.216 acres |
| Robert G. Lau & Genevieve Lau | 30 acres |
| Tradesman Corporation | 10 acres |
| Genevieve Lau | 10 acres |
| Robert G. Lau | 10 acres |
| Dave L. Costello & Patricia Costello | 20 acres |

McClellan did not apply for a subdivision permit prior to making any of his conveyances.

A jury trial in the justice of the peace court resulted in McClellan being found guilty on three counts of unlawful subdivision of land. McClellan was sentenced to serve a thirty-day term in the county jail and to pay a fine of $750. McClellan appealed to the district court, and that court affirmed the judgment and sentence which had been entered by the justice of the peace court. McClellan then proceeded with a petition for a writ of review, which this Court granted.

## DISCUSSION

### A. Sufficiency of the Evidence

McClellan asserts that the jury verdict was not supported by sufficient evidence. He maintains that the prosecution charged each deed as a subdivision of land and that each

charge must stand on its own merits without regard to the other charges. The State agrees that it was required to independently prove each charge of unlawful subdivision of land and maintains that it presented sufficient evidence to permit a rational jury to find McClellan guilty beyond a reasonable doubt on each count for which he was convicted.

In analyzing a sufficiency-of-the-evidence argument, we use the following well established standard:

"This Court assesses whether all the evidence which was presented is adequate enough to form the basis for a reasonable inference of guilt beyond a reasonable doubt to be drawn by a finder of fact when that evidence is viewed in the light most favorable to the State. We will not substitute our judgment for that of the jury when we are applying this rule; our only duty is to determine whether a quorum of reasonable and rational individuals would, or even could, have come to the same result as the jury actually did."

*Urrutia v. State,* 924 P.2d 965, 967 (Wyo. 1996) (quoting *Hodges v. State,* 904 P.2d 334, 339 (Wyo.1995) (citation omitted)).

The relevant statutes provide in pertinent part:

### § 18–5–302. Definitions.

(a) As used in this article:

. . .

(vii) "Subdivision" means a division of a lot, tract, parcel or other unit of land into three (3) or more lots, plots, units, sites or other subdivisions of land for the immediate or future purpose of sale, building development or redevelopment, for residential, recreational, industrial, commercial or public uses. The word "subdivide" or any derivative thereof shall have reference to the term subdivision, including mobile home courts, the creation of which constitutes a subdivision of land.

Wyo. Stat. § 18–5–302(a)(vii) (1996).

### § 18–5–303. Exemptions from provisions.

(a) Unless the method of sale is adopted for the purpose of evading the provisions of this article, this article shall not apply to:

. . .

(v) The sale of land where the parcels involved in the sale are thirty-five (35) acres or larger[.]

Wyo. Stat. § 18–5–303(a)(v) (1996).

### § 18–5–304. Subdivision permit required.

No person shall subdivide land or commence the physical layout or construction of a subdivision without first obtaining a subdivision permit from the board of the county in which the land is located.

Wyo. Stat. § 18–5–304 (1996).

### § 18–5–314. Penalties.

Any person who willfully violates any provision of this article or any rule or order issued under this article, and any person who as an agent for a subdivider, developer or owner of subdivided lands offers for sale any subdivided lands or subdivisions without first complying with the provisions of this article shall upon conviction be fined not more than five hundred dollars ($500.00) or imprisoned in a county jail for not more than thirty (30) days or both. Each day of violation constitutes a new offense.

Wyo. Stat. § 18–5–314 (1996).

The jury found McClellan guilty of unlawful subdivision of land on counts one, four, and five of the information. Count one charged that the May 31, 1994, conveyance of twenty acres to the Costellos was illegal. Count four charged that the September 6, 1994, conveyance of ten acres to Genevieve Lau was illegal, and count five charged that the September 6, 1994, conveyance of ten acres to Robert G. Lau was illegal.

McClellan contends that "subdivision" requires the division of a tract of land into three or more parcels and that his multiple land divisions which divided tracts of land into only two parcels each did not constitute subdivisions. In an attempt to support this argument, McClellan relies on the "one-time rule." The "one-time rule," according to the testimony given at the trial, allows land to be divided one time into two parcels, one or

both of which are less than thirty-five acres, without a subdivision occurring.

■ If we were to read the statute as McClellan suggests, there would never be a subdivision or a statute violated by a conveyance or a series of conveyances since each conveyance of land to another person necessarily splits the land into only two parcels. We will not construe a statute in a manner which will render any portion of it meaningless. *McAdams v. State*, 907 P.2d 1302, 1304 (Wyo.1995).

■ We, therefore, must analyze whether the evidence was sufficient to support the jury's verdict. With regard to count one, the twenty-acre conveyance to the Costellos, the evidence demonstrated that this was not a single isolated conveyance of twenty acres from McClellan's larger tract but that it was a part of a broader division of McClellan's land into three or more parcels. Dave Costello testified that, at the time he and his wife purchased their parcel, a number of other parcels, which were at least ten acres, were being offered for sale. Dave Costello also testified that he not only purchased the twenty acres but that he also took an option to purchase another parcel of McClellan's land. This evidence, along with the evidence of McClellan's other conveyances, supported the jury's conclusion that, when he made the Costello conveyance, McClellan subdivided his land into three or more parcels without obtaining a permit and that an illegal subdivision occurred at that point in time.

The jury's verdict regarding the ten-acre conveyance made to Genevieve Lau and the ten-acre conveyance made to Robert Lau referenced in counts four and five was similarly supported by sufficient evidence. Since the conveyance to the Costellos constituted an unlawful subdivision of land, these conveyances amounted to further and independent subdivisions. Additionally, even if only these two conveyances which were accomplished on the same day were considered, they were illegal subdivisions because, on that day alone, three parcels were created: the ten-acre parcel to Genevieve Lau, the ten-acre parcel to Robert Lau, and the 85.216 acres which McClellan retained. Since McClellan had not obtained a permit, the conveyances were unlawful.

Additionally, the jury was entitled to consider the history of conveyances which consisted of the following: McClellan transferred a portion to the Laus, jointly, who are McClellan's mother and step-father; the Laus retained a portion and transferred a portion to the Tradesman Corporation, McClellan's closely held corporation; the Tradesman Corporation retained a portion after transferring a portion back to McClellan; McClellan then transferred a portion back to the Laus, individually. Section 18-5-303 provides that, "[u]nless the method of sale is adopted for the purpose of evading the provisions of this article, this article shall not apply to" and then it lists eight exemptions. Given these facts, the jury could have reasonably determined that McClellan's intent was to adopt a method of sale for the purpose of evading the requirements of the real estate subdivisions statutes.

Other evidence which supported the jury's verdict included the fact that, after the May conveyance to the Costellos, McClellan continued making improvements to the land at issue. He had a backbone electrical system installed on the property in August of 1994, and he had an access road constructed in September of 1994 at a cost of approximately $22,000 to $25,000. A backbone electrical system is a major feed line which acts as a trunk line and provides electricity taps for individual lots. An electrical engineer testified that this type of electrical system is usually installed "by a developer who in turn can recoup the costs with some equity amongst the individual lot owners."

Although each charge has to be proven independently, the jury was entitled to consider each charge in light of all the evidence which was introduced. The evidence was sufficient to establish that McClellan had illegally subdivided his land.

## B. Admissibility of Transactions Which Occurred After Date of Crimes

McClellan contends that evidence of a potential sale of all his land, which would have taken place in December 1994, was crucial to his case because it proved that he did not

intend to subdivide this property. The State counters that the evidence which McClellan wished to have introduced was not relevant and that it would have confused or misled the jury.

Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." W.R.E. 401. "Evidence which is not relevant is not admissible." W.R.E. 402.

During the trial, a conference was held outside the jury's presence to determine the admissibility of this proffered evidence. McClellan argued that he had a buyer for all the property except for the Lau and Costello parcels. He further argued that he should be allowed to present the evidence of this potential sale to show that he never intended to subdivide the property. The State responded that the potential purchaser did not become involved until after the problem had arisen with the Costellos and after McClellan had been advised that he had illegally subdivided his land. The justice of the peace court did not allow the evidence to be presented, stating that, "if there's a subdivision violation, the violation is done when these deeds were done."

■ Evidence of a sale which was going to occur after the unlawful conveyances had been made does not vitiate McClellan's culpability regarding the conveyances at issue in this case. Furthermore, the property which was going to be sold did not include the parcels which had been previously sold to the Costellos and the Laus, the transactions which led to the charges being filed in the first place. The sale which McClellan had hoped to complete in December of 1994 was a separate and distinct transaction, completely unrelated in time, intent, and legal effect to the transactions for which he was convicted and, therefore, was irrelevant to the charges against him.

## C. Void for Vagueness

McClellan challenges the constitutionality of WYO. STAT. §§ 18–5–301 through 18–5–315 (1996), arguing that those provisions are void

for vagueness. The State maintains that the provisions on their face, or as they were applied to McClellan, are not unconstitutionally vague.

■ Under our well established rule for analyzing the constitutionality of statutory provisions, we presume that every law is constitutional, resolving all doubts in favor of constitutionality. *Luplow v. State,* 897 P.2d 463, 466 (Wyo.1995). The burden is upon McClellan to demonstrate that the provisions at issue are unconstitutionally vague. *Id.* We have previously summarized the analysis which we undertake on vagueness issues:

> When we review a statute for vagueness, we begin by determining whether the statute may be challenged "facially" or only as it applies to the challenger's conduct. We review a statute "facially," *i.e.,* we examine the statute in light of how it might be applied to situations other than the challenger's, only if the statute "reaches a substantial amount of constitutionally protected conduct," or if the statute specifies no standard of conduct at all.

*McCone v. State,* 866 P.2d 740, 745 (Wyo. 1993), *dismissal of habeas corpus aff'd,* 83 F.3d 432 (10th Cir.1996) (citations omitted).

The conduct which is regulated by the provisions of the real estate subdivisions article is not constitutionally protected conduct but is conduct which may be regulated solely on the basis of reasonable social and economic considerations. Additionally, the provisions do specify a standard of conduct which includes obtaining a permit before subdividing land. Since the provisions do not reach a substantial amount of constitutionally protected conduct and since a standard of conduct is specified, our review is limited to determining whether the statutes are unconstitutionally vague as they were applied to McClellan's conduct. *See McCone,* 866 P.2d at 746. In conducting such an analysis, we must decide whether the provisions afford sufficient notice to a person of average intelligence that such conduct would be illegal and whether the facts of the case demonstrate arbitrary and discriminatory enforcement. *Id.* In making this determination, we look to the statutory language and previous

court decisions which have limited or applied the article. *Id.*

Since we have never interpreted or reviewed the statutory provisions at issue, we must begin by examining the language of the provisions along with McClellan's conduct which gave rise to his convictions. *Id.* Our analysis of the challenged provisions, coupled with our consideration of the facts of this case, leads us to conclude that the statutes as they were applied to McClellan are sufficiently clear.

■ The arbitrary enforcement aspect of McClellan's vagueness challenge is directed in part toward the penalty provision in § 18–5–314: "Each day of violation constitutes a new offense." This penalty provision, however, was not applied to McClellan in this case; therefore, his as-applied-to challenge to this provision must fail.

The same reasoning pertains to McClellan's challenge to the portion of § 18–5–314 which provides that a person can be punished for violating "any rule or order issued under this article." McClellan was not punished for violating a rule or order; he was punished for violating the statutory provision which relates to subdividing land. Accordingly, he cannot sustain an as-applied-to challenge to this provision either.

■ McClellan also questions whether the justice of the peace court's jurisdiction was exceeded when he was charged with three statute violations. WYO. STAT. § 5–4–116 (1992) provides in pertinent part:

Justice of the peace courts have jurisdiction in all criminal cases amounting to misdemeanors for which the punishment prescribed by law does not exceed imprisonment for more than six (6) months and a fine of not more than seven hundred fifty dollars ($750.00).

This statute allows a justice of the peace court to assess punishment up to the statutory limits for each misdemeanor violation. We have held that, even though a lower court's criminal jurisdiction is limited to misdemeanors, no prohibition exists against that court imposing consecutive sentences which cumulatively exceed the punishment which may be imposed for a single misdemeanor.

*Tilley v. State,* 912 P.2d 1140, 1143 (Wyo. 1996). The penalties provided in § 18–5–314 render McClellan's crimes misdemeanors, and the justice of the peace court's jurisdiction, consequently, was not exceeded by virtue of the multiple charges against McClellan.

■ In his last vagueness challenge, McClellan claims that the real estate subdivisions article is vague on what constitutes a subdivision and that the provisions in this article delegate basic policy matters to the prosecuting attorney. The term "subdivision" is clearly defined in § 18–5–302(a)(vii), and that definition extends to the use of the term throughout the article. The provisions are clear with regard to what the requirements are for subdividing land in Wyoming, and a prosecutor must work within those requirements.

We conclude that the provisions in the real estate subdivisions article afford sufficient notice to people of average intelligence that dividing land into three or more parcels of less than thirty-five acres without obtaining a permit is unlawful. The statute clearly proscribes such activity. We also conclude that there was not an arbitrary or discriminatory enforcement of any provision against McClellan.

### D. Double Jeopardy

■ In his final issue, McClellan asserts that his multiple convictions violate the double jeopardy clause. McClellan urges us to utilize the statutory elements test that was defined in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), which we have applied in many Wyoming cases. *See Owen v. State,* 902 P.2d 190, 192 (Wyo.1995). " '[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not.' " *State v. Keffer,* 860 P.2d 1118, 1130 (Wyo.1993) (quoting *Blockburger,* 284 U.S. at 304, 52 S.Ct. at 182).

The statutory elements test is not applicable in this case because McClellan did not

violate two distinct statutory provisions. He violated only one statutory provision, but he violated it on more than one occasion.

 In resolving the question of whether a defendant has suffered double jeopardy by virtue of multiple convictions and sentences, we "look to the intention of the legislature with respect to whether the conduct should be punished as a single offense or as more than one." *Duffy v. State,* 789 P.2d 821, 825 (Wyo.1990). Although multiple punishments is not a problem in this case since the justice of the peace court apparently merged the sentences for the purpose of punishment by neglecting to include the words "on each count," "consecutively," or "concurrently" in the judgment and sentence which would have indicated multiple sentences, this rule is still useful in ascertaining whether McClellan's multiple convictions have placed him in double jeopardy.

To determine what the legislature intended, we examine statutory definitions as well as the circumstances which surrounded the charged crimes; i.e., whether the crimes arose out of different transactions and whether different evidence was required to prove the individual offenses. *Id.* We are persuaded that the legislature intended for separate violations of the statute at issue to be charged as separate offenses. McClellan's convictions involved separate transactions with different people and with three different parcels of land. McClellan made three separate illegal conveyances, and a separate charge for each one is appropriate. The fact that each conviction may have been supported by overlapping evidence does not negate the convictions on double jeopardy grounds.

## CONCLUSION

We hold that McClellan's convictions were properly obtained in accordance with the statutes which, as they were applied to McClellan, are not unconstitutionally vague.

Affirmed.