2002 WY 79

Franklin S. WILLIS, Appellant (Defendant),

v.

The STATE of Wyoming, Appellee (Plaintiff).

No. 01–74.

Supreme Court of Wyoming.

May 22, 2002.

Nadine McLeod, Casper, Wyoming, Representing Appellant.

Hoke MacMillan, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Georgia L. Tibbetts, Senior Assistant Attorney General, Representing Appellee.

Before LEHMAN, C.J., and GOLDEN, HILL, KITE, and VOIGT, JJ.

KITE, Justice.

[¶ 1]   Franklin Willis was convicted of felony larceny by a bailee under Wyo. Stat. Ann. § 6–3–402(b) (LexisNexis 2001) for selling three horses which were entrusted to his care.   He appeals his judgment and sentence claiming insufficient evidence and certain evidentiary errors.   Finding no error, we affirm.

## ISSUES

[¶ 2]   Mr. Willis presents the following issues for our review:

### I.

Whether the evidence was insufficient to show a felonious taking as the appellant had an honest good faith belief that he had right and title to the property[.]

### II.

Whether the Appellant was denied his right to a fair trial as [g]uaranteed by the Due Process Clause of the United States and the Wyoming Constitutions when the trial court erred by its refusal to allow the appellant to introduce evidence to show basis for appellant's belief that the horses had been given him by Sondeno.

### III.

Whether the appellant was denied his right to a fair trial when the trial court erred by allowing hearsay testimony by the state to improperly impeach its own witness[.]

### IV.

Whether the evidence [was] insufficient to find that the property sold on the date charged met the felony limit[.]

### V.

Was the cumulative effect of the errors discussed above such that the appellant was denied his right to a fair trial[?]

The State of Wyoming phrases the issues as:

I.   Was sufficient evidence presented at trial to support Appellant's conviction?

II.   Was Appellant denied a fair trial by the district court's evidentiary rulings?

## FACTS

[¶ 3]   Mr. Willis and Kelly Sondeno initially met in the 1980s when they were both

raising and racing thoroughbred horses. In June 1995, Ms. Sondeno experienced difficulties feeding and maintaining the horses she owned. As a result, Mr. Willis agreed to lend her $6,500, to be repaid within a year. In lieu of interest on the executed promissory note, Ms. Sondeno gave Mr. Willis two geldings. Ms. Sondeno insists that, at the same time, they also entered into a lease agreement whereby Mr. Willis would care for several of her horses, breed them to his paint stallions, and keep the foals. Ms. Sondeno claims she sent several horses [1] to Mr. Willis, including the three mares that are the subject of Mr. Willis' criminal prosecution: Wears Like Iron, Miss Pitty Pat, and Hockey Jeans. Although he admitted he did not receive a bill of sale, Mr. Willis argues Ms. Sondeno gave all the horses to him because she could not afford to appropriately care for them.

[¶ 4] Over time, Ms. Sondeno made several trips to Mr. Willis' property to check on the horses. In January 1997, Mr. Willis notified her that one of the three mares passed away. In the summer of 1997, Ms. Sondeno went to check on her horses and noticed the other two mares were gone. Mr. Willis told her a veterinarian had put them down due to poor health. In February 1999, Ms. Sondeno became suspicious and did an inventory of the horses. She was able to find only eight. When she confronted Mr. Willis, he maintained he owned the horses.

[¶ 5] In May 1999, a search warrant was executed, and the Wyoming Livestock Board seized the eight remaining horses. An ensuing investigation revealed the three mares did not die as Mr. Willis previously stated but were sold by him for slaughter at the Billings Livestock Commission auction (the auction) on August 24, 1996. The investigation also disclosed Mr. Willis had listed himself as the owner of the horses and he had received a check from the sale in the amount of $1,291.24.

[¶ 6] As a result of his sale of the three mares, Mr. Willis was charged with one count of felony larceny by a bailee under § 6–3–402(b), and he pleaded not guilty. A jury trial commenced on March 13, 2000, and

he was convicted on March 14, 2000. The trial court sentenced him to five years' probation and ordered him to pay $9,500 in restitution and $100 to the crime victims' compensation account. He appeals from his judgment and sentence.

## DISCUSSION

### A. Sufficiency of the Evidence

[¶ 7] Mr. Willis contends the state did not present sufficient evidence to support his conviction for felony larceny by a bailee. Specifically, he argues he had a good faith belief that Ms. Sondeno gave him ownership of the horses; therefore, he could not be guilty of the crime charged. He further asserts the state did not present sufficient evidence to establish the horses were worth $500 or more, an element necessary to support his conviction. *See* Wyo. Stat. Ann. § 6–3–402(c)(i) (LexisNexis 2001).

[¶ 8] When addressing a claim that the evidence is insufficient to sustain the conviction for a crime, we apply the following standard:

This Court assesses whether all the evidence which was presented is adequate enough to form the basis for a reasonable inference of guilt beyond a reasonable doubt to be drawn by a finder of fact when that evidence is viewed in the light most favorable to the State. We will not substitute our judgment for that of the jury when we are applying this rule; our only duty is to determine whether a quorum of reasonable and rational individuals would, or even could, have come to the same result as the jury actually did.

*Hodges v. State*, 904 P.2d 334, 339 (Wyo. 1995) (citation omitted); *see also Robinson v. State*, 11 P.3d 361, 368 (Wyo.2000), *cert. denied*, 532 U.S. 980, 121 S.Ct. 1620, 149 L.Ed.2d 483 (2001). This inquiry does not require a court to determine whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. *Broom v. State*, 695 P.2d 640, 642 (Wyo. 1985). Rather, the relevant question is whether, after viewing the evidence in the

---

1. Ms. Sondeno claims she leased forty-seven     horses to Mr. Willis.

light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* This standard gives the trier of fact the responsibility to fairly resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from the facts. *Id.* " 'Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review all of the evidence is to be considered in the light most favorable to the prosecution.' " *Id.* (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).

[¶ 9]   The evidence must be evaluated in the context of the elements of felony larceny by a bailee, which are set forth in § 6–3–402(b):

> (b) A bailee, a public servant as defined by W.S. 6–5 101(a)(vi) or any person entrusted with the control, care or custody of any money or other property who, with intent to steal or to deprive the owner of the property, converts the property to his own or another's use is guilty of larceny.

To sustain Mr. Willis' conviction for felony larceny by a bailee, the state had to prove the following elements beyond a reasonable doubt:

1.   On or about the 24th day of August, 1996

2.   In Big Horn County, Wyoming

3.   The Defendant, Franklin S. Willis

4.   While a bailee entrusted with the control, care or custody of any money or property

5.   With intent to steal or deprive the owner of the property

6.   Converted the money or property to his own use; and

7.   The value of the money or property converted was $500.00 or more.

[¶ 10]   Mr. Willis does not dispute he sold the mares and retained the proceeds of that sale. He does dispute, however, that he was a bailee and intended to steal or deprive Ms. Sondeno of her ownership interest in the horses. We conclude sufficient evidence was presented at trial to allow a reasonable and

rational jury to find the essential elements of the crime of felony larceny by a bailee beyond a reasonable doubt.

[¶ 11]   The evidence favorable to the state consisted of testimony that in July 1995 Mr. Willis agreed to lend Ms. Sondeno $6,500 in exchange for two geldings as interest. She then agreed to lease him several mares to breed with his paint stallions, and, in turn, his care for the horses would ease her financial concerns. In 1996, Ms. Sondeno sent the three mares that are the subject of Mr. Willis' criminal conviction to him without a bill of sale. She claims she never transferred ownership of the horses to Mr. Willis. Rather, she maintains they made an oral agreement that Mr. Willis would lease the mares for a period of almost four years and she fully expected their return at the end of the lease term.

[¶ 12]   Meanwhile, Mr. Willis told Ms. Sondeno that the three mares passed away. After her suspicions were raised, however, she confronted Mr. Willis and learned the three mares were sold at the auction. Mr. Willis later admitted he sold the mares because they were barren and unable to breed with his stallions. This testimony was corroborated by Duane Homewood who stated that, while employed with the Wyoming Livestock Board, he performed a brand inspection for three mares that Mr. Willis intended to sell at the auction. Moreover, a sales receipt for three mares totaling $1,291.24 was introduced.

[¶ 13]   Two additional witnesses supported Ms. Sodeno's assertion that Mr. Willis was merely a bailee with no ownership interest in the horses. Both witnesses testified they had conversations with Mr. Willis, who told them he was going to use the horses for breeding purposes until Ms. Sondeno became financially secure. Mr. Willis' claim that he in good faith believed he owned the horses and therefore could not have committed the crime charged was fully presented to the jury and clearly rejected as evidenced by the guilty verdict.

[¶ 14]   Next, Mr. Willis argues the state did not meet its burden of proving the amount of $500 or more, a necessary element

**895**

of the crime of felony larceny by a bailee. However, when the facts are viewed in a light most favorable to the state, the evidence reveals Mr. Willis sold the three mares on August 24, 1996, at the auction. He received a payment in the amount of $1,291.24, which clearly exceeds the $500 felony limit. Importantly, Mr. Willis admitted he sold three mares on that date, and the brand inspection records revealed three mares with the same general description as the mares in question were sent to the auction.

[¶ 15] Despite this evidence, Mr. Willis subsequently vacillated as to whether two of the horses he sold were in fact the particular horses underlying the state's criminal charge. He contends the testimony establishes that two of the mares at issue, Miss Pitty Pat and Hockey Jeans, were bred at the time of the sale at the auction and therefore he would not have sold them to be slaughtered on the date alleged. In support of his contention, Mr. Willis points to the introduction of a Stallion Breeding Report at trial that indicated the two mares were bred. He then notes that the sales receipt relied upon by the state confirms the remaining mare was sold for only $310, an amount less than the requisite $500 or more necessary to support his conviction. Again, Mr. Willis presented evidence to the jury to support his version of the events, but the jury soundly rejected it upon giving a guilty verdict.

> It is not our function to weigh the evidence for a determination as to whether or not it is sufficient to establish guilt beyond a reasonable doubt. We have consistently held that even though it is possible to draw other inferences from the evidence presented, it is the responsibility of the jury to resolve conflicts in the evidence. The factfinder-in this case, a jury-did that. The jury is entitled to weigh and disregard the evidence intended to discredit the witnesses for the State. Certainly the jury is not obligated to believe the defendant's witnesses.

*Broom*, 695 P.2d at 642 (citations omitted). The evidence could reasonably support the finding that the three mares were sold on the date alleged and the value converted was $500 or more. In sum, we hold that the jury, as a reasonable trier of fact, could find felony larceny by a bailee beyond a reasonable doubt.

**B. Evidentiary Rulings**

[¶ 16] We have repeatedly articulated the standard of review for evidentiary rulings:

> Evidentiary rulings are within the sound discretion of the trial court and include determinations of the adequacy of foundation and relevancy, competency, materiality, and remoteness of the evidence. This court will generally accede to the trial court's determination of the admissibility of evidence unless that court clearly abused its discretion.

*Solis v. State*, 981 P.2d 34, 36 (Wyo.1999) (citation omitted). We have described the standard of an abuse of discretion as reaching the question of the reasonableness of the trial court's choice. Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means exercising sound judgment with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. "In the absence of an abuse of discretion, we will not disturb the trial court's determination." [*Griswold v. State*, 2001 WY 14, ¶ 7, 17 P.3d 728, ¶ 7 (Wyo.2001).] The burden is on the defendant to establish such abuse. *Skinner v. State*, 2001 WY 102, ¶ 25, 33 P.3d 758, ¶ 25 (Wyo.2001), *cert. denied*, —— U.S. ——, 122 S.Ct. 1554, —— L.Ed.2d ——, 2002 WL 205622 (2002) (some citations omitted).

**C. Hearsay**

[¶ 17] Mr. Willis claims the trial court incorrectly permitted inadmissible hearsay when it allowed Irene Holland to testify concerning statements made by Mr. Willis' daughter-in-law, Dana Willis. In the state's case-in-chief, Ms. Willis denied having any knowledge pertaining to the final disposition of the three mares at issue. She further denied telling Ms. Sondeno and Ms. Holland that Mr. Willis took the mares to the auction. The state then called Ms. Holland to testify. Over Mr. Willis' hearsay objection, Ms. Holland recalled the discussion she and Ms. Sondeno had with Ms. Willis. Ms. Holland testi-

fied that Ms. Willis stated Mr. Willis was taking the three mares to the sale. Mr. Willis claims error resulted when the state improperly impeached its own witness, Ms. Willis.

[¶ 18] First, any party may attack a witness' credibility, including the party calling the witness. W.R.E. 607. Thus, the fact that the state called Ms. Willis is of no import. Prior inconsistent statements are admissible under W.R.E. 613(b) to impeach by contradiction a witness' trial testimony. W.R.E. 613(b) provides: "Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate him thereon, or the interests of justice otherwise require." This rule applies when two statements—one made at trial and one made previously—are irreconcilably at odds. In such an event, counsel is permitted to show the discrepancy by extrinsic evidence, if necessary. *United States v. Winchenbach*, 197 F.3d 548, 558 (1st Cir.1999). The purpose of this type of impeachment evidence is to show a witness to be generally capable of making errors in his testimony. 3A John Henry Wigmore, Evidence § 1017 (Chadbourn rev.1970). In doing so, counsel can resort to the witness' own prior statements in which that witness has given a contrary version. *Id.*

[¶ 19] Prior statements made by a witness are not hearsay if the declarant testifies at the trial and is subject to cross-examination concerning the statements. W.R.E. 801(d)(1). The use of a prior inconsistent statement is not inadmissible hearsay because it is not offered for the truth of the matter asserted. Rather, it is used as a tool to compare both statements and conclude that the declarant has erred in making one or the other without determining which statement is erroneous. 3A John Henry Wigmore, Evidence § 1018 (Chadbourn rev. 1970).

[¶ 20] Ms. Holland's testimony properly falls within the scope of the Wyoming Rules of Evidence. The state asked Ms. Willis whether she could recall previously stating the three mares were sent to the auction. She was afforded an opportunity to explain or deny the prior inconsistent statement and denied ever making such a statement or knowing what ultimately happened to the horses. The defense then had full opportunity to explore the issue during her cross-examination. Next, the state used extrinsic evidence—Ms. Holland's testimony—to impeach Ms. Willis. Ms. Holland testified that Ms. Willis stated the three mares were sent to the auction. The state was entitled to introduce prior statements made by Ms. Willis that were inconsistent with her trial testimony. Therefore, we conclude the trial court did not abuse its discretion in permitting the impeachment evidence.

**D. Documents**

[¶ 21] Next, Mr. Willis claims the trial court improperly declined to admit two Jockey Club certificates of foal registration. The first certificate he sought to introduce allegedly indicated Ms. Sondeno transferred ownership of one of her horses—Cherry Labon—to him on September 1, 1989. The state objected to the admission of the certificate on relevancy grounds, and the trial court sustained the objection. The second certificate indicated Ms. Sondeno transferred ownership of another horse—Toy Trader—to him on August 1, 1995. He asserts the introduction of both certificates would have bolstered his theory that Ms. Sondeno intended to transfer ownership of all the horses that he took from her property over time, including the three mares at issue.

[¶ 22] As to the second certificate, the record does not reflect whether the trial court overruled or sustained the state's relevancy objection. The record only reveals that the certificate was offered at trial, the state objected to its admissibility, and, following a recess, the certificate was never mentioned again. We agree with the state that the trial court's failure to make a ruling on the record precludes this court from determining whether the trial court abused its discretion. As a proponent of the evidence, the defense should have asked the trial court to make a ruling on the record in order to preserve this issue on appeal. Therefore, we are left to determine whether the trial court

improperly denied admission of the first certificate.

[¶ 23] Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." W.R.E. 401. "Evidence which is not relevant is not admissible." W.R.E. 402.

[¶ 24] Ms. Sondeno transferred the certificate to Mr. Willis nearly seven years before he obtained the several horses he claims she gave to him and his alleged criminal conduct occurred. Of primary concern is, the certificate does not relate to the three horses underlying Mr. Willis' criminal conviction. Furthermore, the remoteness in time of this occurrence does not make her transfer of the ownership of her horses to Mr. Willis, including the three mares, more probable than if the certificate was not introduced. The 1989 transfer of ownership was unrelated to Mr. Willis' conviction in time, intent, and legal effect. *See McClellan v. State*, 933 P.2d 461, 466 (Wyo.1997). Therefore, we cannot conclude the trial court clearly abused its discretion in denying the admission of this document.

### E.  Cumulative Error

[¶ 25] Finally, Mr. Willis claims the cumulative effect of the claimed errors discussed within this opinion deprived him of a fair trial. Since there was no error with respect to any of Mr. Willis' contentions, this court has no premise to consider cumulative error. *Pearson v. State*, 12 P.3d 686, 692 (Wyo.2000).

[¶ 26] Affirmed.