**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 30 2001**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT
_____

DAVID M. VEILE; VEILE MORTUARY, INC.,

     Plaintiffs-Counterdefendants - Appellants,

v.

GORDON D. MARTINSON, individually and in
his official capacity as Washakie County Coroner;
RALPH SEGHETTI, individually and in his
official capacity as Washakie County Sheriff;
STAN TIMS; GEORGE A. WILLIAMS,
individually and in his official capacity as
Washakie County Deputy Coroner; SCOTT G.
PARIS, individually and in his official capacity as
Washakie County Ambulance Service Employee;
ROBERT A. BRYANT, III, individually and in his
official capacity as Washakie County Ambulance
Service Employee; WASHAKIE COUNTY
BOARD OF COUNTY COMMISSIONERS,

     Defendants-Appellees,

MICHAEL L. BRYANT, individually and in his
official capacity as Washakie County Deputy
Coroner; BRYANT FUNERAL HOME, INC., a
Wyoming corporation,

     Defendants-Counterclaimants - Appellees.

No. 00-8005

_____

**Appeal from the United States District Court**
**for the District of Wyoming**
**(D.C. No. 98-CV-194-J)**

William G. Hibbler (Mary B. Guthrie with him on the briefs), Cheyenne, Wyoming, for Plaintiffs-Counterdefendants - Appellants.

Terry L. Armitage, Cheyenne, Wyoming, for Defendants-Counterclaimants - Appellees.

---

Before **SEYMOUR**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and **BROWN**,[*] District Judge.

---

**BRORBY**, Senior Circuit Judge.

---

Plaintiffs David M. Veile and Veile Mortuary, Inc. appeal the district court's conclusion they did not possess a protected property interest in a rotation policy established by defendant Gordon D. Martinson, the Coroner of Washakie County, Wyoming, and the court's decision to strike an expert witness designation on the property interest issue. Further, they challenge the district court's refusal to give a particular jury instruction in the trial on defendants Michael L. Bryant's and Bryant Funeral Home, Inc.'s counterclaim alleging antitrust violations, defamation, and stalking. Finally, Mr. Veile challenges the sufficiency of the evidence supporting the jury verdict in Mr. Bryant's favor on the stalking claim. We have jurisdiction under 28 U.S.C. § 1291 and affirm.

---

[*] The Honorable Wesley E. Brown, Senior United States District Judge for the District of Kansas, sitting by designation.

I. Background

Mr. Veile is the owner/operator of Veile Mortuary in Worland, Wyoming. In 1995, Mr. Bryant opened Bryant Funeral Home in direct competition with Veile Mortuary. Around this time, Mr. Bryant also joined the Washakie County Ambulance Service as a volunteer emergency medical technician, and became a deputy coroner at Coroner Martinson's invitation. In an effort "to treat both [funeral homes] equally," Coroner Martinson established a policy requiring the referral of "coroner cases"[1] to Veile Mortuary and Bryant Funeral Home on an odd- and even-month rotating basis when (1) a funeral home preference had not been expressed by the deceased person or his family, or (2) a body is unclaimed or unidentified (hereinafter "rotation policy"). Mr. Veile and Veile Mortuary sued Mr. Martinson, Mr. Bryant, two other deputy coroners, the Board of County

---

[1] In Wyoming,

"[c]oroner's case" means a case involving a death which may involve any of the following conditions:
    (A) Violent or criminal action;
    (B) Apparent suicide;
    (C) Accident;
    (D) Apparent drug or chemical overdose or toxicity;
    (E) The deceased was unattended or had not seen a physician within six (6) months prior to death;
    (F) Apparent child abuse causes;
    (G) The deceased was a prisoner, trustee, inmate or patient of any county or state corrections facility or state hospital;
    or (H) If the cause is unknown.

Wyo. Stat. Ann. § 7-4-104(a)(i).

Commissioners, and Bryant Funeral Home under 42 U.S.C. §§ 1983 and 1985(3) claiming a constitutionally protected property interest in the rotation policy, and defendants' failure to follow the policy with certain coroner cases over a three-year period. [2] In support of this claim, plaintiffs designated Ronnie W. Flud, the Coroner of Clark County, Nevada, as an expert witness to testify about the operation of coroner rotation systems.

Defendants filed a motion to strike the designation of Mr. Flud as an expert witness due to the alleged unreliability and irrelevance of his proposed testimony. Adopting the magistrate judge's report and recommendation, the district court granted defendants' motion to strike. Specifically, the district court held plaintiffs "failed ... to provide some indication of the reliability of the designated testimony" as required by *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), in that "Mr. Flud asks us only to rely on his long experience to support his conclusion that the [rotation] policy was violated. This is not enough."

---

[2] Mr. Veile and Veile Mortuary also brought supplemental state law claims of intentional interference with prospective economic advantage and violation of Wyo. Stat. § 40-4-101 and 114. They do not appeal the district court's decision to grant defendants' summary judgment motion as to these claims, and we deem the issue waived. *See State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 984 n.7 (10th Cir. 1994) ("[A]ppellant failed to raise this issue in his opening brief and, hence, has waived the point.").

Defendants also filed a motion for summary judgment arguing plaintiffs did not have a constitutionally protected property interest and defendants are protected by qualified immunity. After reviewing the deposition testimony, exhibit, and case law plaintiffs presented in opposition to the summary judgment motion, the district court concluded the rotation policy: (1) did not constitute an agency or administrative regulation under Wyoming law; (2) was not required or supported by any Wyoming statute, regulation, or administrative rule; (3) had not been declared a constitutionally protected property interest by the Wyoming Supreme Court; and (4) was "laden with ambiguity" in that it was neither mandatory nor binding for any specific period of time. The district court characterized the rotation policy as "an informal system or informative policy adopted by Coroner Martinson to provide guidance in the performance of the duties of the coroner's office with respect to coroner's cases." Accordingly, the district court held "plaintiffs' complaint fails to allege that the defendants deprived them of a protected interest, and thus, the plaintiffs' claims against all defendants based upon federal law fail." Finally, the district court held defendants were entitled to qualified immunity based on plaintiffs' failure to meet its summary judgment burden of showing defendants' actions violated a constitutional right that was clearly established at the time of the conduct at issue.

Mr. Bryant and Bryant Funeral Home counterclaimed pursuant to federal antitrust law and state law claims of stalking and defamation. The district court denied plaintiffs' motion for summary judgment on defendants' counterclaim, and the counterclaim proceeded to trial. At the close of Mr. Bryant's and Bryant Funeral Home's case-in-chief, Mr. Veile moved for judgment as a matter of law in his favor on all three causes of action. The district court granted the motion on the antitrust and defamation claims, but allowed the stalking claim to continue. At the close of evidence, Mr. Veile renewed his motion for judgment as a matter of law on the stalking claim; The district court denied the motion. The jury found Mr. Veile guilty of stalking and awarded Mr. Bryant $90,000 in compensatory damages and $86,000 in punitive damages. Mr. Veile filed a motion for a new trial and renewed his motion for judgment as a matter of law, both of which the district court denied.

There are four issues on appeal. Mr. Veile and Veile Mortuary claim the district court erred by concluding the rotation policy did not create a constitutionally protected property interest under § 1983, [3] striking the designation of Mr. Flud as an expert witness, and refusing to instruct the jury on the directed verdicts in their favor on the antitrust and defamation counterclaims.

---

[3] Plaintiffs do not appeal the district court's summary judgment ruling in favor of defendants on the 42 U.S.C. § 1985(3) claim, and we deem this issue waived. *See Mhoon*, 31 F.3d at 984 n.7.

Mr. Veile claims insufficient evidence existed to support the jury verdict in Mr. Bryant's favor on the stalking counterclaim.

II.  Discussion

    A.  Section 1983 Claim

We review the grant of summary judgment de novo utilizing the standard described in Rule 56(c) of the Federal Rules of Civil Procedure.  *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).  Summary judgment is appropriate if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c).  Under this standard, we view the evidence and draw reasonable inferences in the light most favorable to the nonmovant.  *See Adler*, 144 F.3d at 670.

"Section 1983 provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights."  *Conn v. Gabbert*, 526 U.S. 286, 290 (1999).  "The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits."  *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 576 (1972).  "In determining whether an individual has been deprived of his [Fourteenth Amendment] right to procedural due process, courts must engage in a two-step inquiry:  (1) did the individual possess a protected

interest such that the due process protections were applicable; and if so, then (2) was the individual afforded an appropriate level of process." *Farthing v. City of Shawnee*, 39 F.3d 1131, 1135 (10th Cir. 1994). Accordingly, we turn to the threshold legal issue whether Mr. Veile and Veile Mortuary possessed a constitutionally protected property interest in the rotation policy. *See id.* We conclude they did not and affirm the district court's ruling.

"Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law – rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Roth*, 408 U.S. at 577. "Protected property interests arise ... from state statutes, regulations, city ordinances, and express or implied contracts. Such interests may be created by rules or mutually explicit understandings that support Plaintiff's claim of entitlement to the benefit." *Dill v. City of Edmond*, 155 F.3d 1193, 1206 (10th Cir. 1998) (quotation marks, citations and alteration omitted). In other words, "[property] interests attain ... constitutional status by virtue of the fact that they have been initially recognized and protected by state law." *Paul v. Davis*, 424 U.S. 693, 710 (1976).

We agree with the district court that the most analogous case law addresses

tow truck/wrecker rotational policies utilized by law enforcement organizations to deal with auto accidents and disabled vehicles. *See, e.g., Abercrombie v. City of Catoosa*, 896 F.2d 1228 (10th Cir. 1990). In *Abercrombie*, we held an Oklahoma statute requiring certain of its cities to make wrecker referrals "'on an equal basis as nearly as possible'" created a property interest in wrecker referrals in favor of the plaintiff. *See id.* at 1231-32 (quoting Okla. Stat. tit. 47, § 955). Reviewing its own case law, our decision in *Abercrombie*, and other circuit case law, the Eleventh Circuit distilled the following principle: "The existence of a property right in such a case turns on whether the alleged claim of entitlement is supported or created by state law such as a state statute or regulatory scheme or decisional law." *Morley's Auto Body, Inc. v. Hunter*, 70 F.3d 1209, 1216-17 (11th Cir. 1995) (reviewing cases from the Second, Third, Fourth, Fifth, Seventh, Tenth, and Eleventh Circuits). We agree and apply that principle to this case.

In this case, plaintiffs do not challenge the district court's conclusions regarding the lack of connection between the rotation policy and Wyoming law. They do not argue that the rotation policy constituted county legislation or that there existed an express or implied contract between them and the county or coroner. They do not cite, nor have we found, any Wyoming statute, regulation, administrative rule, or case law that may be construed to establish their entitlement to receive the coroner cases at issue. Rather, they merely claim the

rotation policy itself creates the alleged property right. [4] We conclude the rotation policy does not give rise to a constitutionally protected property interest, because any expectations arising from the rotation policy are not grounded in Wyoming law. *See Morley's Auto Body*, 70 F.3d at 1214, 1216-17; *Abercrombie*, 896 F.2d at 1231-32. For these reasons, we also hold defendants are entitled to qualified immunity based on plaintiffs' failure to meet their summary judgment burden of showing defendants' actions violated a constitutional right that was clearly established at the time of the conduct at issue. *See Nelson v. McMullen*, 207 F.3d 1202, 1206 (10th Cir. 2000); *see also Camfield v. City of Okla. City*, 248 F.3d 1214, 1228(10th Cir. 2001) ("A constitutional right is clearly established when there is a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts has found the law to be as the

---

[4] Plaintiffs' reliance on *Bussell v. Stahl*, 669 F. Supp. 381 (D. Wyo. 1987) is misplaced. In *Bussell*, the district court denied a motion to dismiss plaintiffs' § 1983 action as follows: "[T]he plaintiffs assert a property right based on letters from defendants Nord [the administrator of an Albany County, Wyoming hospital] and Stahl [the Albany County Coroner] establishing an official county policy that the plaintiffs were to receive half of all coroner cases from [the hospital]. The Court finds that this is sufficient to establish the allegation that the plaintiffs had a legitimate claim of entitlement *created by the state*." *Id.* at 383 (emphasis added). Because it addressed a motion to dismiss, the court in *Bussell* was required to "accept the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff." *Benefield v. McDowall*, 241 F.3d 1267, 1270 (10th Cir. 2001) (quotation marks and citation omitted). Further, the court could not dismiss the complaint unless it appeared "beyond doubt that the plaintiff [could] prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Accordingly, *Bussell* merely stands for the undisputed proposition that plaintiffs *could* prove the existence of a protected property right by applying sufficient facts *to Wyoming law*. Plaintiffs have simply failed to do so in this case.

plaintiff maintains." (Quotation marks, alteration and citation omitted.).)

We therefore affirm the district court's decision to grant summary judgment for defendants on plaintiffs' § 1983 claim.

B.  Expert Witness Designation

Mr. Veile challenges the district court's conclusion that Mr. Flud's proposed testimony as set forth in his "Expert Report/Opinion" failed the reliability requirement of Rule 702 of the Federal Rules of Evidence pursuant to *Kumho Tire* , 526 U.S. at 147.  We are prevented from evaluating the district court's analysis by Mr. Veile's failure to include in the record a copy of Mr. Flud's "Expert Report/Opinion."  Accordingly, we must affirm. *See Scott v. Hern* , 216 F.3d 897, 912 (10th Cir. 2000) ("Where the record is insufficient to permit review we must affirm.").

C.  Jury Instruction

Mr. Veile claims the district court erred by failing to instruct the jury during the counterclaim trial that directed verdicts had been entered in his favor on the antitrust and defamation claims.  Specifically, he argues this failure prejudiced him in that it allowed the jury to improperly award Mr. Bryant compensatory damages on the stalking claim for the amount of Bryant Funeral

Home's alleged loss of corporate business. We disagree.

Rule 51 of the Federal Rules of Civil Procedure states: "No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." Fed. R. Civ. P. 51. After the close of evidence, the district court tendered Instruction #14 to the parties: "The claims of plaintiff for defamation and for violation of federal antitrust laws are no longer before you and need not be decided by you." Mr. Veile's counsel clearly stated at the jury instruction conference: "I have no objections to the instructions that have been tendered, although I would like to make an offer on some additional instructions." None of these "additional instructions" dealt with Instruction #14 or the directed verdicts on the antitrust and defamation claims. Accordingly, Mr. Veile did not comply with Rule 51, which means we review for plain error and "will affirm unless the instructions were patently, plainly erroneous and prejudicial." *Greene v. Safeway Stores, Inc.*, 210 F.3d 1237, 1245 (10th Cir. 2000) (quotation marks and citation omitted). We conclude Instruction #14 is not patently, plainly erroneous and prejudicial, because it provided the jury with "an ample understanding of the issues"; specifically, that the jury must only consider and decide Mr. Bryant's stalking claim. *Allen v. Minnstar, Inc.*, 97 F.3d 1365, 1368 (10th Cir. 1996).

Mr. Veile's two citations to the record do not call this conclusion into question. In these portions of the record, Mr. Veile did not object to the district court's resolution of the issues at hand and "never offered any reason for the district court to believe that the failure to instruct [on the directed verdicts] was legal error." *Greene*, 210 F.3d at 1245 (party's acceptance of the district court's proposed instruction and silence in the face of the district court's resolution of the issue does not comply with Rule 51); s *ee Hynes*, 211 F.3d at 1200 (holding party's general objection to a jury instruction does not preserve for appeal under Rule 51 a specific concern whether certain additional language should have been included in the instruction). Although he claims the first citation supports the proposition the district court "refus[ed] to instruct that directed verdicts had been entered," this portion of the record actually reveals Mr. Veile's counsel's acceptance of the district court's solution:

> MR. HIBBLER: Your Honor, I have a problem. [The jury is] going to think I talked about only stalking and I presented no evidence to the other two causes of action and they're going to think I have no evidence on –
>
> THE COURT: They will not be on the verdict form.
>
> MR. HIBBLER: Thank you, sir.

The second citation to the record precedes Mr. Veile calling his first witness, and involves a discussion of certain evidence by the district court and counsel in light of the directed verdicts. Mr. Veile's counsel argued the

-13-

"complaints" Mr. Veile filed against Mr. Bryant with the State Board of Embalming were immaterial as a matter of law to the stalking claim, and asked the court: "At some point in time would there be an instruction to the jury to disregard any testimony concerning any of the complaints, then?" The district court resolved the issue by concluding: "I think we'll just instruct the jury at the end of the case on the stalking case, as opposed to attempting to instruct them further on what portions of the evidence at this point that they've heard so far and can consider.... It seems to me would solve the problem." Mr. Veile's counsel simply responded, "Thank you." Again, this exchange reflects counsel's agreement with the court's solution.

Finally, Mr. Veile's claim of prejudice is speculative and contrary to law in this circuit. "The assumption that juries can and will follow the instructions they are given is fundamental to our system of justice." *United States v. Cardall*, 885 F.2d 656, 668 (10th Cir. 1989). In order to recover on the stalking claim against Mr. Veile, Instruction #20 stated Mr. Bryant must prove by a preponderance of the evidence: (1) Mr. Veile engaged in a course of conduct reasonably likely to harass Mr. Bryant; (2) Mr. Veile acted with the intent to harass Mr. Bryant; (3) the course of conduct included any one of, or a combination of, following, placing under surveillance, or otherwise harassing Mr. Bryant; (4) Mr. Veile's conduct was a proximate cause of injury and damage to Mr. Bryant; and (5) the

nature and extent of Mr. Bryant's damages and the amount thereof. Instruction #24 stated in part: "If you find that David Veile is liable to Bryant because of stalking, then you must determine an amount of money that is fair compensation for Michael Bryant's damages.... You may award compensatory damages, based on the evidence introduced at trial, for emotional pain, suffering, inconvenience, and mental anguish." On appeal, Mr. Veile does not claim any error in these instructions. This court presumes the jury followed Instructions #20 and 24 and therefore did not award Mr. Bryant compensatory damages for the alleged amount of Bryant Funeral Home's loss of corporate business. *See United States v. McClatchey*, 217 F.3d 823, 833 (10th Cir.), *cert denied*, 121 S. Ct. 574 (2000). Accordingly, Mr. Veile's claim of prejudice is unavailing.

D.  Sufficiency of the Evidence on the Stalking Claim

We turn to Mr. Veile's challenges to the sufficiency of the evidence supporting the jury's verdict on Mr. Bryant's stalking claim. Specifically, Mr. Veile argues the evidence is not sufficient to show Mr. Bryant suffered "substantial emotional distress and that [Mr.] Veile was the proximate cause thereof." Accordingly, he claims the district court should have granted either his motion for a new trial or motion for judgment as a matter of law.

We review the district court's denial of a motion for a new trial made on

the ground that the jury's verdict is against the weight of the evidence for a manifest abuse of discretion. *See Getter v. Wal-Mart Stores, Inc.*, 66 F.3d 1119, 1125 (10th Cir. 1995), *cert. denied*, 516 U.S. 1146 1996). "Our inquiry focuses on whether the verdict is clearly, decidedly or overwhelmingly against the weight of the evidence." *Id.* (quotation marks and citation omitted).

> We review the district court's denial of a Rule 50(b) motion for judgment as a matter of law *de novo*, applying the same legal standard as the district court. We shall review all the evidence in the record, construe the evidence and inferences most favorably to the nonmoving party, and refrain from making credibility determinations and weighing evidence. Judgment as a matter of law is appropriate only if the evidence points but one way and is susceptible to no reasonable inferences which may support the opposing party's position.

*Tyler v. RE/MAX Mountain States, Inc.*, 232 F.3d 808, 812 (10th Cir. 2000) (quotation marks and citations omitted).

In Wyoming, stalking is a statutorily defined criminal and civil offense. *See* Wyo. Stat. Ann. §§ 1-1-126, 6-2-506. A person is guilty of stalking:

> if, with intent to harass another person, the person engages in a course of conduct reasonably likely to harass that person, including but not limited to any combination of the following:
>
> (i) Communicating, anonymously or otherwise, or causing a communication with another person by verbal ... or written means in a manner that harasses;
>
> (ii) Following a person, other than within the residence of the defendant;
>
> (iii) Placing a person under surveillance by remaining present

> outside his or her ... place of employment, vehicle, other place occupied by the person, or residence other than the residence of the defendant; or
>
> (iv) Otherwise engaging in a course of conduct that harasses another person.

Wyo. Stat. Ann. § 6-2-506(b); *see id.* § 1-1-126(a) ("A person who is the victim of stalking as defined by W.S. 6-2-506 may maintain a civil action against an individual who engages in a course of conduct that is prohibited under W.S. 6-2-506 for damages incurred by the victim as a result of that conduct."). "Course of conduct" and "harass" are defined by the statute:

> (i) "Course of conduct" means a pattern of conduct composed of a series of acts *over any period of time* evidencing a continuity of purpose;
>
> (ii) "Harass" means to engage in a course of conduct, including but not limited to verbal threats, written threats, vandalism or nonconsensual physical contact, directed at a specific person or the family of a specific person, which the defendant knew or should have known would cause a reasonable person to suffer *substantial emotional distress*, and which does in fact seriously alarm the person toward whom it is directed."

*Id.* § 6-2-506(a) (emphasis added); *see Luplow v. State*, 897 P.2d 463, 467-68 (Wyo. 1995) (utilizing § 6-2-506(b)(i), (ii), and (iii) to define the phrase "but not limited to" in § 6-2-506(a)(ii)). Regarding "substantial emotional distress," the Wyoming Supreme Court has held "[t]he word 'substantial' has a sufficiently definitive meaning that we think it can be understood by persons of common intelligence." *Luplow*, 897 P.2d at 468 (concluding § 6-2-506 is not unconstitutionally vague). "Emotional distress" means mental distress, mental

-17-

suffering, or mental anguish, and includes depression, dejection, shame, humiliation, mortification, shock, indignity, embarrassment, grief, anxiety, worry, fright, disappointment, nausea, and nervousness, as well as physical pain. *See Wilder v. Cody Country Chamber of Commerce*, 868 P.2d 211, 223 (Wyo. 1994); *Town of Upton v. Whisler*, 824 P.2d 545, 551 (Wyo. 1992); *Leithead v. American Colloid Co.*, 721 P.2d 1059, 1066 (Wyo. 1986); *see also Luplow*, 897 P.2d at 468 (referring to, *inter alia*, *Wilder*, *Whisler*, and *Leithead* for the definition of "emotional distress"). [5]

We find substantial evidence in the trial record to support the jury verdict, which means: (1) the verdict is not clearly, decidedly, or overwhelmingly against

---

[5] Mr. Veile's argument on appeal is based almost entirely on the legal theory that, in Wyoming, the procedural requirements, evidentiary burdens, and elements of the tort of intentional infliction of emotional distress apply to a civil action for stalking. We disagree. As noted above, in defining the phrase "emotional distress," the Wyoming Supreme Court referred to its established civil case law. *See Luplow*, 897 P.2d at 468 (citing cases). The cited cases define "emotional distress" in a consistent manner with regard to several different causes of action, not merely intentional infliction of emotional distress. *See, e.g., R.D. v. W.H.*, 875 P.2d 26, 31-35 (Wyo. 1994) (negligent infliction of emotional distress and intentional infliction of emotional distress); *Wilder*, 868 P.2d at 223 (intentional infliction of emotional distress); *Whisler*, 824 P.2d at 546, 549-51 (42 U.S.C. § 1983 for violation of a constitutionally protected property right). Further, the Wyoming Supreme Court engaged in an exhaustive analysis of § 6-2-506 in *Luplow*, and we believe the absence of a discussion about the tort of intentional infliction of emotional distress in the opinion (save for its presence in some of the cases cited in the opinion) means the tort's requirements and elements have no bearing on the separate, statutorily-defined civil action for stalking. Accordingly, we will not apply the procedural requirements, evidentiary burdens, and elements of the tort of intentional infliction of emotional distress to this case.

the weight of the evidence; and (2) the evidence does not point but one way in Mr. Veile's favor. The jury heard the following testimony at trial. Mr. Veile told Mr. Bryant and another that he would "ruin" Mr. Bryant both financially and in terms of his reputation in Worland. Further, Mr. Veile told Mr. Bryant, who belongs to the Mormon church, that he believed Mr. Bryant's religion is a cult.

After Mr. Bryant opened his funeral home, Mr. Veile would follow Mr. Bryant around the community at least once per month. In addition, during funeral services handled by Bryant Funeral Home, Mr. Bryant would find Mr. Veile nearby watching him. Mr. Bryant testified about two occasions when Mr. Veile parked his car near Bryant Funeral Home and utilized binoculars to watch Mr. Bryant conduct business, and four occasions when Mr. Veile either followed or placed Mr. Bryant under surveillance. Mr. Veile even followed Mr. Bryant to Billings, Montana, where Mr. Bryant was handling some Bryant Funeral Home business and personal shopping. As Mr. Bryant went to drive his car out of a parking space, Mr. Veile pulled his car behind Mr. Bryant and blocked his departure. Mr. Veile ended the encounter only after Mr. Bryant became aware of Mr. Veile looking at him.

Mr. Bryant testified about four occasions when Mr. Veile drove to the scene of an ambulance call in which Mr. Bryant participated, waited nearby, and

watched Mr. Bryant's actions. On a fifth occasion, Mr. Veile pulled in front of Mr. Bryant's car and slowed down in order to prevent Mr. Bryant from responding to the ambulance call in a timely manner, even though Mr. Bryant was utilizing his emergency lights to signal his purpose.

Mr. Bryant testified Mr. Veile's statements about ruining his business and reputation, as well as Mr. Veile's comment about the Mormon religion, caused him mental anguish in the form of fear, worry, discomfort, indignity, and shock, because he was concerned Mr. Veile may try to cause him and his family physical harm and/or adversely impact his livelihood. Mr. Bryant and his wife testified Mr. Veile's actions caused Mr. Bryant to suffer from migraine headaches and become irritable such that his children complained he did not treat them as nicely as he once did. Mr. Bryant's mental distress was aggravated by trying to keep his children from realizing the stress and worry Mr. Veile was causing him, and being unsuccessful in that regard. Mr. Bryant's wife testified: "As the numerous ... things that happened, the drive-bys, the watching, ... always looking out of the back of your eye to see if someone's following you or someone's watching. I watched this anxiety and stress build up with [Mr. Bryant]." Mr. Bryant testified: "[A]ny time Mr. Veile was following me caused me alarm."

Finally, the jury saw a remarkably complex diagram Mr. Veile created with

Mr. Bryant's name in the middle surrounded by the names of fourteen other members of the Washakie County community. The diagram has lines drawn from each name to show their connection to Mr. Bryant and each other in terms of the county coroner's office, ambulance service, law enforcement, hospital, and the categories of "spouse-relative" and "other." Mr. Veile testified it showed "the relationships between everybody that Mike Bryant had direct associations with through his public office." The jury could reasonably infer from the diagram itself and the evidence surrounding the circumstances of its distribution to Bob Richardson, Chief of the Worland Police Department, that Mr. Veile inordinately focused on and sought to establish by observation the professional and personal interactions of Mr. Bryant with others in the community. After receiving a copy of the diagram from Chief Richardson, Mr. Bryant testified it caused him "[m]ajor concern.... [I]t appears to me that [Mr. Veile] made me the center of a point here trying to make people come after me or that he's after me and this is another attempt to stalk me."

On appeal, Mr. Veile argues he refuted each specific incident presented by Mr. Bryant as evidence of stalking during trial. However, as noted above, it is the jury's exclusive function to resolve conflicts in the evidence, and it clearly resolved them in Mr. Bryant's favor. *See Tyler*, 232 F.3d at 812; *Thunder Basin Coal Co. v. Southwestern Pub. Serv. Co.*, 104 F.3d 1205, 1212 (10th Cir. 1997)

("'The jury ... has the exclusive function of appraising credibility, determining the weight to be given to the testimony, drawing inferences from the facts established, resolving conflicts in the evidence, and reaching ultimate conclusions of fact.'" (Quoting *Kitchens v. Bryan County Nat'l Bank*, 825 F.2d 248, 251 (10th Cir. 1987)).).

Accordingly, the district court did not abuse its discretion by denying Mr. Veile's motion for a new trial, and we affirm the district court's denial of Mr. Veile's motion for judgment as a matter of law.

E. Recovery of Attorney's Fees by Mr. Bryant on the Stalking Claim

In his response brief on appeal, Mr. Bryant argues Wyoming statutes allow the prevailing plaintiff in a stalking claim to recover attorney's fees. He claims the district court erred in denying his corresponding motion for attorney's fees and "seeks recovery of attorney's fees and costs in this appeal," but he did not cross-appeal this issue. Accordingly, we have not considered his argument, because "a party may not attack a decision with a view toward enlarging his or her own rights or lessening the rights of an adversary absent a cross appeal." *Hansen v. Director, OWCP*, 984 F.2d 364, 367 (10th Cir. 1993); *see Trigalet v. Young*, 54 F.3d 645, 647 n.3 (10th Cir.), *cert. denied*, 516 U.S. 932 (1995) (holding this court lacked jurisdiction to consider appellees' challenge to the

district court's summary judgment ruling for the appellants on one cause of action, where appellees did not cross-appeal the issue but merely raised it in their response brief on appeal).

III. Conclusion

For the reasons stated herein, we **AFFIRM** the judgments of the district court on Mr. Veile's and Veile Mortuary's § 1983 claim and the jury verdict on Mr. Bryant's stalking claim.