FILED
United States Court of Appeals
Tenth Circuit

June 19, 2013

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

# UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

GEORGE LOPEZ,

      Plaintiff-Appellant,

v.

ADMINISTRATIVE OFFICE OF THE
COURTS, a judicial branch of the
State of Utah; KATHY ELTON, an
individual,

      Defendants-Appellees.

No. 11-4199

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION
(D.C. No. 2:07-CV-00571-TC)**

---

Kathryn Steffey of Smith Hartvigsen, PLLC (R. Christopher Preston, Smith
Hartvigsen, PLLC, with her on the brief), Salt Lake City, Utah, for Plaintiff-
Appellant.

J. Clifford Peterson, Assistant Utah Attorney General (Mark L. Shurtleff, Utah
Attorney General, and Meb W. Anderson, Assistant Utah Attorney General, with
him on the brief), Salt Lake City, Utah, for Defendants-Appellees.

---

Before **BRISCOE,** Chief Circuit Judge, **HOLLOWAY** and **HARTZ,** Circuit
Judges.

---

**HOLLOWAY**, Circuit Judge.

Plaintiff-Appellant George Lopez conducts mediations in a program created and managed by the Administrative Office of Courts of the State of Utah (the AO). In 2006 he was removed from the panel of mediators which the AO had created under statutory authority to mediate certain domestic matters. Mr. Lopez brought suit in federal district court alleging that his removal from that list of specialized mediators violated his right to due process and his right to equal protection of the laws in violation of 42 U.S.C. § 1983. Mr. Lopez also alleged breach of contract, breach of implied contract, and breach of the implied covenant of good faith and fair dealing. The Defendants in the suit and Appellees on appeal are the AO and Ms. Kathy Elton, who was formerly the administrator of the specialized mediation program.

The district court had jurisdiction of this matter under 28 U.S.C. §§ 1331 & 1367. Defendants moved for summary judgment, and the district court granted the motion, deciding all claims in favor of the Defendants. Plaintiff Lopez now brings this appeal, invoking this court's jurisdiction under 28 U.S.C. § 1291.

**I**

The AO includes an Alternative Dispute Resolution Department. The ADR Department manages two rosters of mediators that are relevant here. The first is referred to by the parties in this case as simply the ADR roster. Mr. Lopez is on this roster and has been since 1995. Mediators may apply for admission to this

-2-

roster, which supplies mediators for civil cases in several of Utah's judicial districts.

The state legislature also directed the AO to create a pilot program in one judicial district to offer special mediation services for Expedited Parent-time Enforcement. This program was focused on disputes involving parents' visitation rights and was titled the Co-Parenting Mediation Program (CMP). To implement the CMP, the AO created a separate panel of mediators, which the parties refer to as the CMP roster. The AO did not accept applications for the CMP roster; instead, the AO created the roster by invitation. Defendant Elton became director of the ADR program in 2000. As the director, Ms. Elton oversaw the administration of the CMP roster. Mr. Lopez had been a member of the CMP roster for several years when he was removed in August 2006.

In February 2004, Ms. Elton, along with three others involved with the CMP or the AO, created a set of guidelines for the CMP titled the "Co-Parenting Mediation Program Best Practices" manual. This manual, according to the affidavit of Ms. Elton, was issued as a set of recommended guidelines and not a set of rules because of the "flexible nature of mediation generally and the 'pilot' nature of the program . . . ." For purposes of this appeal, the key provisions of the Best Practices Manual are those which deal with removal of mediators from the roster:

The CMP Program Manager, in consultation with the Utah Court ADR Director, reserves the right to remove a mediator from the roster if he or she does not meet the minimum requirements for inclusion, or in response to concerns or complaints reported to the CMP.

II R. at 214. In October 2004, the CMP issued a revised Best Practices Manual. which included language that at least arguably limited the discretion of the administrators to remove a mediator from the roster. Mr. Lopez's arguments on appeal include references to those provisions, but Mr. Lopez did not rely on those provisions in the district court. *See* II R. at 420, 423-24.[1] Accordingly, we deal herein with only the February 2004 Best Practices Manual.

In 2006, Ms. Elton received complaints about Mr. Lopez's performance in mediating CMP cases. First was an allegation that Mr. Lopez had sent a letter directly to parties seeking mediation, an act that would have violated an ethical rule against direct contact with parties represented by counsel. Shortly after that, Ms. Elton reviewed an unfavorable evaluation of a CMP mediation that Mr. Lopez had conducted. Ms. Elton later discussed this evaluation with Mr. Lopez and was satisfied with Mr. Lopez's explanation of that mediation. But Ms. Elton meanwhile (or shortly thereafter) had received another unfavorable evaluation from a participant in one of Mr. Lopez's mediations that caused her great

---

[1]In an affidavit submitted in support of his opposition to Defendants' motion for summary judgment, Mr. Lopez did reference the provisions that he argued placed limits on the discretion granted to the administrators to remove a mediator from the roster. But in the brief itself, those provisions were not argued.

concern.  This evaluation indicated that Mr. Lopez had made "findings" in the mediation process[2] and had made a recommendation that could have caused the participants to incur charges for additional mediation time.

There is some dispute as to what happened next.  According to Ms. Elton, she contacted Mr. Lopez to discuss these allegations.  Mr. Lopez, however, denies that he had any discussion with Ms. Elton about the allegations.  In any event, Ms. Elton consulted with the AO's legal counsel and two other persons, the Assistant Director of the AO and the CMP Manager, to discuss the allegations and decide on a response.  Based on these consultations, Ms. Elton sent Mr. Lopez a letter on August 8, 2006, telling him that he was being removed from the CMP roster.  In that letter, Ms. Elton also informed Mr. Lopez that she was considering removing him from the general roster of ADR mediators.  She posed several specific questions to Mr. Lopez about his conduct and said that she would consider his response before deciding whether to take the additional step of removing him from the ADR roster.

Mr. Lopez responded to Ms. Elton's letter with a letter and memorandum on August 21, 2006.  Mr. Lopez denied having committed any ethical violations.

---

[2]Mediation is distinguished from arbitration and some other dispute resolution alternatives specifically by the neutral role of the mediator, a role in which making any kind of findings or rulings is inappropriate.  The parties enter into mediation with the understanding that the mediator will have this limited role.  We note that Mr. Lopez denied breaching any ethical rules, and we express no opinion on the validity of the allegations against him.

Ms. Elton notified an ad hoc committee of the Judicial Council about the complaints against Mr. Lopez and her action in response. The Committee appointed a three-person ethics panel to review the matter. Following the review, the ethics panel set a hearing with Mr. Lopez, which was held on October 4, 2006. The ethics panel issued findings of fact and a decision on November 29, 2006. The ethics panel found that Mr. Lopez had violated rules adopted by the courts to govern alternative dispute resolution.

After the ethics panel had issued its decision, Mr. Lopez made three requests to be reinstated to the CMP roster, all in 2007. Ms. Elton denied the first two requests, and the Management Committee of the Judicial Council reviewed and denied the third request for reinstatement.

## II

On appeal Mr. Lopez first argues that the district court erred in holding that there was no implied contract between him and the AO. Mr. Lopez relies primarily on Utah cases which hold that a public employee may have rights under an implied contract which are in addition to the terms of public employment that are generally set in Utah by state statute. *See, e.g., Cabaness v. Thomas*, 232 P.3d 486 (Utah 2010); and *Canfield v. Layton City*, 122 P.3d 622 (Utah 2005). We agree with the Defendant AO, however, that there is no evidence in this case to support the premise that Mr. Lopez was a public employee. There is considerable evidence that Mr. Lopez was *not* an employee. For instance, the structure of the

-6-

program provided for the mediators' fees to be paid by the clients, not the AO, although the AO subsidized the fees of some impecunious clients using available federal funds. Plaintiff's relationship with the AO was, at most, that of an independent contractor. Thus, the cases on which Mr. Lopez relies are not directly applicable in this context.

The general principles of implied contract outlined in the cases cited by Mr. Lopez nevertheless have application outside the realm of employment law, a point raised by Plaintiff Lopez in his reply brief. We ordinarily do not review issues raised for the first time in a reply brief. Moreover, our review of the record reveals that, as Defendants maintained at oral argument, Mr. Lopez argued in the district court only that he had a contract of employment. *See* II R. at 431 (brief opposing Defendants' motion for summary judgment in which Plaintiff asserts that "controls" by the CMP, the AO, and "the State" had the legal effect of taking "the mediator out of the independent contractor role" and making him an employee). The argument thus appears to have been forfeited. Even if not, however, we conclude that the argument would be unavailing.

In Utah, an implied contract "results when there is a manifestation of mutual assent, by words or actions or both, which reasonably are interpretable as indicating an intention to make a bargain with certain terms or terms which reasonably may be made certain." *Heideman v. Washington City*, 155 P.3d 900, 908 (Utah App. 2007) (quoting *Rapp v. Salt Lake City*, 527 P.2d 651, 654 (Utah

-7-

1974)).  The existence of an implied contract is a question of fact, but "the court retains the power to decide whether, as a matter of law, a reasonable jury could find that an implied contract exists."  *Sanderson v. First Sec. Leasing Co.*, 844 P.2d 303, 304 (Utah 1992).

In support of his contention that he had an implied contract with the AO as a mediator, Plaintiff relies on several facts.  In the Best Practices Manual, the AO (the AO seems to concede that the acts of the CMP are fairly attributable to the AO) asserted the mediation assignments would be made on a rotational schedule.[3] Mr. Lopez and all other members of the mediation roster agreed to be available to conduct a mediation session within 15 days of each referral and to charge no more than $75 per hour.

Quoting *Heideman*, the district court held as a mater of law that these commitments were not sufficient to show "'a manifestation of mutual assent, by words or actions or both, which reasonably are interpretable as indicating an intention to make a bargain with certain terms or terms which reasonably may be made certain' as required to create an implied contract."  We agree.  The provisions are simply too vague to be enforceable promises.  In particular, the

---

[3]Because of the requirement that mediations be held within fifteen days of a request, and because the AO wished to use mediators with specifically relevant experience when the circumstances included risks of violence or other special factors, the AO's evidence showed that a strict rotational policy was never in fact implemented.

discretion given to the AO to remove a mediator from the list "in response to concerns or complaints" is so broad as to belie any notion that the AO was making an enforceable promise to the mediators on the list. Note that "concerns or complaints" do not have to be investigated and validated before a mediator is removed from the list. Moreover, Mr. Lopez himself viewed the arrangement that way. In a message to Ms. Elton in response to her having removed him from the CMP roster, Mr. Lopez wrote: "Kathy, I understand and respect your right to remove me from the Co-Parenting Mediation Roster." II. R. 534. Although we do not view this statement as an authoritative legal opinion on Mr. Lopez's relationship with the AO, it is compelling evidence that Mr. Lopez himself did not perceive that he had a contractual right to be on the roster, and so is compelling evidence that the parties had *not* expressed mutual assent to make an enforceable bargain.

Moreover, because of the broad discretion vested in the AO to terminate the arrangement, even if there were a contract we would be compelled to conclude that the contract had not been breached. And that conclusion would find strong support in Mr. Lopez's contemporaneous statement, just quoted, that he recognized that the AO had the right to remove him from the roster. In short, we conclude that the district court correctly granted summary judgment to the Defendants on Plaintiff's breach of contract claim.

**III**

The district court also granted summary judgment on Plaintiff Lopez's federal civil rights claim that he was deprived of a property interest without due process of law. The district judge concluded that Mr. Lopez did not have a property interest in remaining on the CMP mediation roster and therefore had suffered no constitutionally cognizable deprivation. Both in the district court and on appeal Mr. Lopez has conceded that Eleventh Amendment immunity bars this claim against the AO, but he contends that the district court erred in holding that he could not maintain the claim against Ms. Elton.[4]

Mr. Lopez's argument starts from the Supreme Court's statement that "a property interest in employment can, of course, be created by ordinance, or by an implied contract." *Bishop v. Wood*, 426 U.S. 341, 344 (1976). His primary argument is based on his alleged contractual rights, and because we have decided that there is no implied contract that argument necessarily fails. Mr. Lopez alternatively argues that he had a property interest in his position as a mediator on the CMP Roster "because Utah law has expressly created a special classification of mediators who are the only mediators authorized to conduct mediations regarding parent-time disputes." Principal Brief at 29. Our court has recognized that "[t]he existence of a property right in such a case turns on whether the

---

[4]Mr. Lopez's appeal does not include any challenge to the district court's grant of summary judgment to the Defendants on his equal protection claim.

alleged claim of entitlement is supported or created by state law such as a state statute, or regulatory scheme or decisional law." *Veile v. Martinson*, 258 F.3d 1180, 1185 (10th Cir. 2001) (quoting *Morley's Auto Body, Inc. v. Hunter*, 70 F.3d 1209, 1216-17 (11th Cir. 1995)). But we cannot agree with Mr. Lopez that Utah's administration of its CMP program suffices to support his claim of entitlement to his position on the CMP roster.

As already discussed, the Best Practices Manual was a set of recommended guidelines, not a set of rules on which a claim of entitlement could be based. And we have dealt with rotational policies before, with results that guide our analysis here. In *Veile*, the plaintiffs were a mortuary in Worland, Wyoming, and its owner. Worland was a town where there apparently were only two mortuaries, and the county coroner had established a policy to refer "coroner cases" (*see* 258 F.3d at 1183, n.1 for explanation of the term) between the two on a rotating basis. Alleging that his mortuary had not been assigned cases under this policy as expected, plaintiff Veile sued the coroner, *inter alia*. The rotation policy was not required by statute, ordinance, administrative rule, regulation or case law. We held that Veile had no property interest in referrals under the rotational policy "because any expectations arising from the rotation policy are not grounded in Wyoming law." 258 F.3d at 1186. In contrast, we held that a rotational policy for assignments to wrecker services by law enforcement – a policy that was required by state law – was sufficient to create a property interest in referrals

under that system. *Abercrombie v. City of Catoosa*, 896 F.2d 1228, 1231-32 (10th Cir. 1990).

We are also guided by our decision in *Koerpel v. Heckler*, 797 F.2d 858 (10th Cir. 1986). That case had been brought by a physician who sought injunctive relief to prevent the Department of Health and Human Services from excluding him from eligibility for reimbursement under the Medicare program. The plaintiff doctor contended that the Medicare reimbursement program for dialysis patients created "reimbursement expectations" on the part of both patients and treating personnel. We held that this was insufficient to establish that the physician had a property right in reimbursements under Medicare, quoting the Supreme Court's fundamental pronouncement that to establish a property right, "a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Koerpel*, 797 F.2d at 863-64 (quoting *Board of Regents v. Roth*, 408 U.S. 564, 576 (1972)). Although Mr. Lopez has not expressly based his claim of entitlement on his *expectation* of remaining on the CMP roster and receiving appointments to mediate, we conclude that his claim has no more solid basis. Because of the discretion vested in the AO, he cannot claim an entitlement and thus has no property interest. *See also Dickeson v. Quarberg*, 844 F.2d 1435, 1437-39 (10th Cir. 1988).

**Conclusion**

The judgment of the district court is AFFIRMED.